TAYLOR *v.* LEONARD.

Opinion delivered February 28, 1910.

1.  OVERDUE TAX SALE—FAILURE TO ENTER WARNING ORDER.—An overdue tax sale of land is void where the clerk failed to enter the warning order on the record, as required by Acts 1881, p. 65. (Page 126.)

2.  LACHES—WHEN A DEFENSE.—Laches cannot grant an investiture of title, as the statute of limitation does, but is a defense which can be interposed only in equity and against claims for purely equitable relief. (Page 126.)

3.  TAXATION—CONSTRUCTIVE, ADVERSE POSSESSION—PERSONS UNDER DISABILITY.—The act of March 18, 1899, relating to constructive possession by paying taxes on unimproved and uninclosed land (Kirby's Digest, § 5057), must be construed in connection with the general statute relating to adverse possession (Kirby's Digest, § 5056), so that it will not run as to persons under disability as defined in section 5056. (Page 127.)

4.  ADVERSE POSSESSION—PAYMENT OF TAXES.—Under the act of March 18, 1899, providing that unimproved lands shall be deemed in possession of the person paying the taxes under color of title, but that no person shall be entitled to the benefit of the act unless he or those under whom he claims shall have paid the taxes for at least seven years, and not less than three of such payments must be made subsequent to the passage of the act, *held* that the first payment of taxes to put the statute of limitations in motion could not have been for a year earlier than 1894, and the earliest time at which constructive possession began could not have been prior to April 10, 1894. (Page 129.)

Appeal from Desha Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

*Wm. H. Carroll, K. D. McKellar, W. A. Percy,* and *Allen Hughes,* for appellant.

1. Appellees are barred by laches (72 Ark. 101; 81 *Id.* 352; 81 *Id.* 432) notwithstanding their disabilities. 55 *Id.* 85; 64 *Id.* 345.

2. Appellees are barred by limitation. Act March 18, 1899; 74 Ark. 302; 78 *Id.* 95.

3. The seven years must be reckoned backward from April 10, 1901. 83 Ark. 154; 89 *Id.* 300. Under the testimony, Marcus L. Smith was living at the beginning of this seven-year period, or on April 10, 1894; and no subsequent disability could stop the running of the statute. 10 Ark. 580; 31 *Id.* 364.

4. The fact that Marcus Smith died before the passage of the act of 1899 does not prevent it from running as to him.

*Crawford & Hooker,* for appellees.

1. The tax sale under which appellant claims is void. 55 Ark. 30; 70 *Id.* 207; 82 *Id.* 294; 83 *Id.* 234. He therefore acquired no rights whatever until after the passage of the act of 1899; and in support of the assertion of these rights, which are purely legal, the doctrine of laches is not available. 16 Cyc. 154, n. 43; 70 Ark. 371; 67 *Id.* 320; 75 *Id.* 194; 70 *Id.* 256; 50 *Id.* 390; 45 *Id.* 81; 2 Pomeroy, Eq. Jur. (2 ed.), § 817; Bispham, Eq. § 40; 88 Ark. 395.

2. The act of 1899 (Kirby's Dig., § 5057) is not in itself a statute of limitation, but must be read in connection with § 5056 to obtain vital force. The proviso in the latter section as to those under disabilities must therefore apply to § 5057 as well. 74 Ark. 303; 83 *Id.* 154.

3. The evidence shows that Marcus Smith died prior to April 10, 1894, viz., on February 14, 1894. Appellees were therefore owners of this land on April 10, 1894, and, being under disabilities at that time, the statute did not run. 74 Ark. 303.

4. Marcus Smith having died prior to the passage of the act, it could not be held to affect his rights, if it be conceded that he died subsequent to April 10, 1894, as contended by appellant.

FRAUENTHAL, J. This was an action instituted by the petitioner below, Horace F. Taylor, to confirm his title to certain land under the act of March 28, 1899. In his petition he alleged that the land was sold for taxes under a decree of the chancery court in pursuance of proceedings had under the overdue tax act of 1881, and that G. W. Sappington, trustee, became the purchaser thereof at said tax sale and obtained a deed from the commissioner of said court; and that he derived title to the land by mesne conveyances from said purchaser. He also alleged that the land was wild, unimproved and unoccupied; and that he and his grantors had paid the taxes thereon for more than seven consecutive years.

The appellees and others intervened in said action, and were made defendants therein. They claimed to be the legal owners of the land, and deraigned title thereto through grantors who had obtained the land from the United States government. They alleged that the tax sale under which the petitioner claimed title was illegal and void, and pleaded coverture of certain of the defendants and minority of others against any alleged rights of petitioner. They also asked by way of cross complaint that the said tax deed be canceled, and their title to the land quieted. By way of answer to this cross complaint the petitioner pleaded laches against the claim of defendants to the land, and also pleaded title by adverse possession.

The petitioner introduced a deed executed in 1886 to G. W. Sappington, trustee, by the commissioner of said chancery court in pursuance of a decree ordering the sale of said land made under the overdue tax act of 1881, and also deeds showing an unbroken chain of mesne conveyances from said Sappington, trustee, to petitioner. He also introduced tax receipts, showing the payment of taxes on the land by him and his grantors continuously for each year from 1886 to the filing of his petition in 1908.

The defendants proved a deraignment of title to said land as follows: (1). A patent from the United States to the State of Arkansas in 1853. (2). A patent from the State of Arkansas to James Smith in 1856. (3). A deed from James Smith to Marcus L. Smith in March, 1858. (4). That Marcus L. Smith died intestate in Alabama in 1884, leaving him surviving as his heirs the defendants, Beatrice Leonard, M. L. Smith, Edward

J. Smith, Nora V. Robinson and Eugene Smith, who are his children, and Warren F. Smith, Jr., and Edith Smith, who are his grandchildren. These two grandchildren are the children and only heirs of Warren F. Smith, Sr., who died intestate on February 4, 1894, and who was a son of said Marcus L. Smith. The two grandchildren are minors, having been born in 1889 and 1892 respectively, and the defendants Beatrice C. Leonard and Nora V. Robinson were married, respectively, in 1872 and 1892 and have been *feme coverts* continuously since those dates. There is a conflict in the testimony as to the date of the death of Marcus L. Smith. We are of the opinion that there is sufficient evidence showing that he died on February 14, 1894. That was the finding of the chancellor, and we think that finding of fact should not be disturbed.

By stipulation of counsel it was agreed:

"(1). The overdue tax sale in Desha County, under which the petitioner claims north half north half, 27-9-3, is void as to that tract, because no warning order was put of record."

"(3). The cross complaints are considered as amended to conform to the evidence with reference to disabilities of any intervener."

"(4). All of the land involved in both these proceedings to confirm is wild and unoccupied."

"(7). The title to the north half north half, 27-9-3, passed from the United States to the State of Arkansas under the act of September 28, 1850, by selection, approval, and patent issued thereunder."

"(9). That the interveners, Edward J. Smith, Eugene S. Smith, Beatrice C. Leonard, Nora V. Robinson, Warren F. Smith and Edith Smith, are nonresidents, and did not know of their claim to the land in controversy until within a year of the commencement of this action."

The chancery court rendered a decree confirming the petitioner's title to one-half interest in the land and quieting the title of the following defendants, Beatrice C. Leonard, Nora V. Robinson, Warren F. Smith, Jr., and Edith Smith, as to the other half interest; and giving to the petitioner a lien on that one-half interest for the taxes that had been paid by him and those under whom he claims. From that decree the petitioner prosecutes this appeal.

The land in controversy was sold under a decree of the chancery court for the nonpayment of taxes. That suit was instituted under and in pursuance of the overdue tax act of 1881. Upon the filing of the complaint in that suit the clerk failed to enter the warning order on the record as required by the provisions of that act; and therefore the court acquired no jurisdiction in the alleged tax suit, and the proceedings thereunder were absolutely void. It follows that the tax sale and the commissioner's deed executed to Sappington, trustee, under which the appellant claims title to the land, are void. *Gregory* v. *Bartlett,* 55 Ark. 30; *Pope* v. *Campbell,* 70 Ark. 207; *Foohs* v. *Bilby,* 83 Ark. 234.

The appellant urges that he and his grantors have paid the taxes on the land for more than seven years, during all of which time it has been wild, unimproved and unoccupied, and that in the meantime it has greatly enhanced in value. He contends that on this account the rights of defendants to the land are barred by laches. We do not think that it is necessary for us to determine whether or not the evidence shows that this land has greatly increased in value during the time that appellant and those under whom he claims have been paying taxes thereon. The doctrine of laches is not applicable to this action in which the appellant is endeavoring to establish a title to the land; nor can it be interposed against the defense of a legal title set up by the defendants. Laches cannot grant an investiture of title like limitation, but it is purely a defense which can be interposed in a court of equity against claims for purely equitable remedies. In the case at bar the appellant instituted this suit to establish his title to the land in a court of equity. In that court he required the defendants to appear and assert their claim. The claim of the defendants is founded on a "strictly legal title," and this claim they had a right to interpose as a defense to the proceeding instituted by appellant. The defendants do not assert an equitable right, nor did they in the first instance seek to obtain an equitable remedy. They set up a legal title. The doctrine of laches does not apply to a case where one is seeking to enforce a legal title, and where the right to assert that title is not barred by the statute of limitation. In the case of *Rowland* v. *McGuire,* 67 Ark. 320, it is said: "The right to plead such facts (laches) as a defense is subject to the important

limitation that it is confined to claims for purely equitable remedies, to which the party seeking to enforce them has no strict legal right." In the case of *McFarlane* v. *Grober,* 70 Ark. 371, it is said: "The doctrine of laches, invoked by the defendant, does not apply to a case where the plaintiff is not asking any equitable relief, but seeks only to enforce a plain legal title in a court of law, and where her action is not barred by the statute of limitation in reference thereto." And this principle is equally applicable in a case where a defendant interposes his legal title in a court of equity as a defense against one seeking to establish title to the land. In the case of *Chatfield* v. *Iowa & Ark. Land Co.,* 88 Ark. 395, the appellant brought suit in equity to quiet title to land founded upon a tax sale. The appellee alleged that the tax sale was void, and interposed a legal title as a defense, and also by cross complaint asked that its title to the land be quieted. In that case this court, speaking through Mr. Justice BATTLE, says: "But appellant says appellee lost its right to the land by laches. Laches is an equitable defense, and the theory upon which it is sustained in equity is 'that nothing can call a court of equity into activity but conscience, good faith and reasonable diligence; where these are wanting, the court is passive, and does nothing.' In this case the appellant has brought a suit to quiet title, and is indirectly seeking to use it for the purpose of establishing title. * * * It could not avail him as a defense to the cross complaint; for if it was dismissed he would have to sustain his complaint by proof of its allegations before he could prevail in this suit. Appellee is the owner of the lands. The lands are wild and unoccupied. They are in the constructive possession of the appellee. Appellant has acquired no title to them. There is no duty nor necessity for resorting to legal or equitable remedies to establish its right till some one threatens to destroy or impair it; and that he has done in this case. See *Penrose* v. *Doherty,* 70 Ark. 256."

It is contended by appellant that the appellees are barred by limitation under the act of March 18, 1899, which reads as follows: "Unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those

under whom he claims shall have paid the taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act."

This statute in itself is not a statute of limitation. It only declares that the land shall be deemed to be in the possession of the person paying taxes thereon under color of title. It only makes the payment of taxes under the conditions named in the act a constructive possession; and it is only by applying thereto the general statute of limitation contained in section 5056 of Kirby's Digest that such possession, like actual possession, can ripen into title by limitation. In order to make effective this act as a statute of limitation, it must be considered in connection with and a part of section 5056 of Kirby's Digest, so that, in addition to the actual adverse possession required by that section, the constructive adverse possession declared by this act may also result in a complete bar by limitation. And, in becoming thus a part of section 5056 of Kirby's Digest, the provisos of that section relative to those laboring under disabilities apply also to this act. This has been the construction placed upon the act in the case of *Towson* v. *Denson,* 74 Ark. 303. In that case we said:

"When the purchaser has paid taxes for seven successive years, as required by the act of March 18, he thereby becomes a possessor for seven years and the holder of a title, to the extent that seven years actual possession under statutes previously in force gave a title, provided that the conditions as to color of title properly obtained, and no fraud or overreaching had been practiced, or other improper act had been done. And the effect of this will be to extend to cases arising under the act of March 18, 1899, the provisions of the provisos of section 5056 of Kirby's Digest." See also *Updegraff* v. *Marked Tree Lumber Co.,* 83 Ark. 154.

So that if at the time the constructive adverse possession by the payment of taxes began under the act of March 18, 1899, the land was owned by those laboring under any of the disabilities mentioned in said section 5056 of Kirby's Digest, the statute bar of limitation as to them would not become complete until three years next after such disability shall have been removed. Under that act it is provided that payment of the taxes for at least seven

years in succession must be made, and three of these payments must be subsequent to 1899, the time of the passage of the act. In this case, therefore, it became necessary for appellant or his grantors to have paid the taxes on the land for four years in succession next prior to the passage of the act to constitute the full seven successive years required by this act in order to make the limitation complete. The first payment of taxes, therefore, required to have been made could not have been for a year earlier than 1894; and the earliest date at which the constructive possession began so as to put in motion the statute of limitation under this act could not have been prior to April 10, 1894. *Sibly* v. *England,* 90 Ark. 420.

Under the evidence in this case Marcus L. Smith died on February 14, 1894, and the appellees became then the owners of an undivided one-half interest in the land. At that time and continuously since then these appellees have been under the disabilities of coverture and minority. On April 10, 1894, when the statute of limitation was first put in motion, these appellees were the owners of said interest in the land, and the statute of seven years constructive adverse possession did not run against them, on account of their coverture and minority. This is decisive of this case.

Counsel for appellees also contend that the act of March 18, 1899, cannot be a bar to the rights of appellees for the reason that they owned the land at the time of the passage of this act, and at that time were laboring under the disabilities mentioned in the provisos of section 5056 of Kirby's Digest; that on this account the act should not be held to be retroactive as to them, even if Marcus L. Smith had died after April 10, 1894, inasmuch as it is conceded that he died prior to the date of the passage of this act. In the case *Towson* v. *Denson, supra,* it was held that the act was retroactive; but in the same connection it was said: "And, as a reasonable time was allowed after the act was passed in which an interested party could prevent the consequences of the act falling upon him, there is no objection to the act upon the ground that it deprives the appellant herein of any vested right." In that case the parties were *sui juris* at the time of the passage of the act. That case does not determine, therefore, the question as to whether the payment of taxes under the act of March 18, 1899, can relate back for

any period prior to the passage of that act in event the land at the time of its passage was owned by persons laboring under said disabilities. We do not deem it necessary to pass on that question in this case. We only note this contention, so that it may not be implied that we have passed upon that question in this case.

The decree is affirmed.