## Deane v. Moore.

### Opinion delivered November 18, 1912.

Limitation of actions—adverse possession by payment of taxes.—
Kirby's Digest, § 5057, providing that "unimproved and uninclosed land shall be deemed and held to be in the possession of the person

who pays the taxes thereon if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession," etc., must be construed in connection with § 5056, *Id*, and the provisos of the latter section, relating to those laboring under disability, apply to § 5057; and the statute does not run against married women, infants or persons *non compotes mentis*.

Appeal from Jefferson Chancery Court; *John M. Elliott*, Chancellor; affirmed.

*B. S. & J. V. Johnson, M. Danaher* and *Palmer Danaher*, for appellant.

*Crawford & Hooker*, for appellee.

SMITH, J. This suit was commenced in the chancery court of Jefferson County by P. C. Dooley against Mary K. Moore to confirm his title to the southwest quarter, southwest quarter, section 35, township 4 south, range 7 west, situated in that county. Afterwards upon petition of G. A. A. Deane, suggesting the death of P. C. Dooley and stating that before his death he had by his warranty deed conveyed said land to said Deane, an order was made substituting G. A. A. Deane as plaintiff.

There are no controverted facts which it will be material to consider, and the pleadings and proof present this state of case. During all the time herein mentioned plaintiff and his predecessors in title had color of title to the above described tract of land, and the same was unimproved and uninclosed. With this color of title plaintiff and those under whom he claimed commenced paying taxes on the land for the year 1887, and without a break in the payments paid the taxes continuously until the year 1902, when he paid the taxes for the year 1901. The taxes for the year 1902 were paid in the year 1903 by the defendant, since which time neither party has paid taxes continuously for the statutory period. The defendant has been twice married; her first marriage having been to one John P. Murphy April 7, 1875, but he died December 6, 1892; thereafter she was a widow until June 11, 1895, when she was married to her present husband, since which time she has been and is now a *feme covert*.

Both parties concede this case must turn upon our answer

to the question, "Was the void apparent title of the plaintiff made good by limitation against Mrs. Moore, the holder of the original and valid title, by reason of the act of March 18, 1899, and payment of taxes, notwithstanding Mrs. Moore's coverture?" This act is carried into Kirby's Digest as section 5057, and its provisions are as follows:

"Unimproved and uninclosed land shall be deemed and held to be in the possession of the person who pays the taxes thereon, if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession and not less than three of such payments must be made subsequent to the passage of this act."

This act has frequently been before the court, but this particular question has never been decided, although it was raised in the case of *Taylor* v. *Leonard,* 94 Ark. 122; however, the facts of that case were such that the decision of that point was unnecessary. Here the concession is made that plaintiff has paid such taxes as entitle him to have his title confirmed if this right is not defeated by the defendant's coverture. What, therefore, is the proper construction of the act under the facts stated? In determining the legislative intent, these propositions are urged upon our consideration, that while the act itself is not one of limitation it becomes so by reference to section 5056, Kirby's Digest; for, as Judge FRAUENTHAL said in *Taylor* v. *Leonard,* above referred to: "This statute in itself is not a statute of limitation. It only declared that the land shall be deemed to be in the possession of the person paying taxes thereon under color of title. It only makes the payment of taxes under the conditions named in the act a constructive possession, and it is only by applying thereto the general statute of limitations contained in section 5056 of Kirby's Digest that such possession, like actual possession, can ripen into title by limitation. In order to make effective this act as a statute of limitation, it must be considered in connection with and a part of section 5056, Kirby's Digest, so that, in addition to the actual adverse possession required by that section, the constructive adverse possession, declared by this act, may also result in a complete bar by limitation. And, in becoming thus a part of section 5056 of Kirby's Digest,

the provisos of that section relating to those laboring under disability apply also to this act." That where the seven consecutive payments of taxes have been made, at least three of which were subsequent to March 18, 1899, the date of the passage of the act, the constructive possession, resulting from these payments, related back to the beginning of the seven-year period of payment, and gave the same title by defeating any proceeding to recover possession that seven years' actual possession gave under section 5056. This possession, whether actual *possessio pedis* for seven years, or constructive from the payment of taxes for that time, defeats a recovery of possession by any one, except infants, married women, and insane persons. That, although this act was retroactive in its operation, the first case which construed it, that of *Towson* v. *Denson*, 74 Ark. 302, held it was not invalid on that account, for the reason that it gave reasonable time after its enactment in which an interested party could prevent the consequences of the act falling upon him.

This constructive possession may therefore in a proper case relate back for a period of four years prior to the passage of the act, and it does do so in this case if that result is not prevented by the coverture of the defendant at the time of its enactment.

If this act can be said to be retroactive as to persons who were under the disabilities mentioned at the time of its passage, then plaintiff's constructive possession related back to a time prior to the defendant's present marriage, to a time when she was not under disability of coverture, and the statute was thus set in motion when she was under no disability, and its running was not arrested by her subsequent marriage. To sustain this view, we are cited to those cases which hold that, where the statute is set in motion in the lifetime of the ancestor, its running is not arrested by the subsequent infancy of his heir during the remainder of the period of limitation; and to those cases which make the same holding where there is actual entry upon and adverse occupancy of the lands of a person, who subsequent to such entry and adverse occupancy, becomes insane, and we are reminded also of the rule that subsequent marriage does not toll the statute, where it is set in motion during discoverture. And we also have before

us the rule that, where the Legislature makes no exception in a statute of limitation, the court can make none, whatever be the hardships in individual cases. *Hill* v. *Gregory*, 64 Ark. 317.

These principles are here set out that it may appear that we have considered them, and because they explain the views of the two members of the court, who are of the opinion that the decree of the chancery court refusing to confirm and quiet plaintiff's title should be reversed. The view of a majority of the court is that, while the act is retroactive, it was not the legislative intent to so make it retroactive as to cut off the right to sue of persons under the disability of either insanity, infancy, or coverture at the time of its passage. To hold otherwise, would be to say that the Legislature intended that one who was an infant or *non compos mentis* at the passage of the act could be defeated by three payments of taxes subsequent thereto, because in the lifetime of the infant's ancestor, or during a sane period of one who subsequently became *non compos mentis*, taxes were begun to be paid by some one who had only color of title and whose mere payments, for even an indefinite period, could never have ripened into title without this act; yet at the passage of the act and during all the time subsequent thereto, which was necessary for this constructive possession to ripen into title, these persons who are thus being shut off from their right to sue were without capacity to sue. It does not answer this argument to say that a married woman is *sui juris* and may sue, and was given a reasonable time to do so before she was barred after the passage of the act, and therefore should be held to be barred if she did not sue, because the statute gives a married woman exactly the same exemption it gives an infant or one *non compos mentis*; and, as we have reached the conclusion that the Legislature never had the intention of barring an infant or one *non compos mentis*, by allowing only a period to sue for the recovery of his land during all of which time he had no capacity to sue, we have also concluded that there was no such intention in regard to women who were under the disability of coverture at the time of the passage of the act, and who have remained so since.

Affirmed.

HART and KIRBY, JJ., dissenting.