## WATTS *v.* ENGLAND.

### Opinion delivered March 16, 1925.

1. VENDOR AND PURCHASER—EXECUTORY CONTRACT.—An agreement to sell land is preliminary to a sale, but is not the sale itself, and it may be rescinded by agreement among the parties.

2. VENDOR AND PURCHASER—OPTION DEFINED.—An option, as distinguished from a sale of or agreement to sell land is a contract by which the owner agrees with another that he shall have the right to purchase the land at a fixed price within a certain time.

3. VENDOR AND PURCHASER—EXECUTORY CONTRACT.—An executory contract to purchase land is distinguishable from an option in that the latter does not bind the optionee to purchase the land.

4. VENDOR AND PURCHASER—CONTRACT CONSTRUED.—A contract reciting that the vendor has contracted to sell land to the purchaser, and to execute a warranty deed on payment of all the notes, and providing that the contract should be void if any note should not be paid when due, is an executory contract, and not an option.

5. VENDOR AND PURCHASER—CONTRACT CONSTRUED.—The fact that notes given for the purchase of land recite that they are given for the rent of land does not operate to change the contract from an executory contract of sale to an option to purchase, if the contract considered as a whole was intended as a contract of sale.

6. MINES AND MINERALS—CONVEYANCE OF OIL AND GAS.— A conveyance of oil or gas in its natural state is a conveyance of an interest in land.

7. MINES AND MINERALS—ASSIGNMENT OF LEASE.—An oil and gas lease containing no convenant against assignment is assignable.

8. MINES AND MINERALS—VALIDITY OF OIL AND GAS LEASE.—After an oil and gas lease was executed by a purchaser under an executory contract and recorded, it could not be affected by a subsequent agreement of the vendor and purchaser to rescind their agreement without the lessee's consent.

9. MINES AND MINERALS—FORFEITURE OF LEASE.—An oil and gas lease executed by a purchaser under an executory contract of pur-

chase was not forfeited by a failure to pay rent due by the lessee after filing of a suit by the vendor, after rescission of the contract of purchase, to quiet title as against the lessee, in view of the fact that a tender is not required where it is evident that it will not be accepted.

10. MINES AND MINERALS—RIGHTS OF LESSEE.—Rights of a lessee in an oil and gas lease, executed by a purchaser of land under an executory agreement to purchase and filed for record before rescission or of such executory agreement, *held* to entitle the lessee to protect his interest by paying off the balance of the purchase price.

Appeal from Nevada Chancery Court; *C. E. Johnson*, Chancellor; affirmed.

STATEMENT OF FACTS.

Appellants brought this suit in equity against appellees to cancel an oil and gas lease to certain land in Nevada County, Arkansas.

Appellants are the widow and heirs-at-law of T. J. Watts, who died intestate in Ouachita County, Arkansas, on the 16th day of December, 1922. On the 26th day of March, 1917, T. J. Watts and Charlie Haynie entered into an agreement as follows:

"That T. J. Watts, party of the first part, has this day contracted to sell to Charlie Haynie, party of the second part, the following described land: North half of the northeast quarter of section 7, northeast quarter of the northwest quarter of section 7, all in township 14 south, range 20 west, containing 120 acres, more or less; all in the county of Nevada, State of Arkansas, on the following terms: Eight notes of $150 each, due and payable each successive year, beginning October 1, 1917, the last note being payable October 1, 1924, with interest at the rate of 10 per cent. per annum from due date until paid, which were this day executed by Charlie Haynie to said T. J. Watts. Upon the payment of each note, and the maturity of the last note, due October 1, 1924, with interest thereon, if any, T. J. Watts, party of the first part, agrees to grant Charlie Haynie, party of the second part, a warranty deed to the above described land, reserving

and excepting timber as specified in deed given .T. J Watts. by Bank of Prescott and Westmoreland Bros. Should any one or all of these notes not be paid when due, this contract is void.

"Signed this 26th day of March; 1917.

."CHARLIE HAYNIE."

On the same day Charlie Haynie executed eight notes of $150 each, due respectively on October 1, 1917, to October 1, 1924, inclusive. The notes were signed by Charlie Haynie and made payable to T. J. Watts for $150 "as rent for 120 acres of land known as the Westmoreland Place."

Charlie Haynie entered into possession of said land, and paid the two notes falling due respectively on October 1, 1917, and 1918. Charlie Haynie made default in the payment of the notes falling due respectively on October 1, 1919, 1920 and 1921. On or about the 1st day of September, 1922, Charlie Haynie being unable to make further payments on said land, agreed with said T. J. Watts to surrender and deliver to him the contract above quoted.

On the 29th day of December, 1922, Charlie Haynie executed a note payable. on or before October 1, 1923, to the order of T. J. Watts in the sum of $100. The note recites that it was given for the rent of the land described in it, which is the same land involved in this action.

On the 16th day of July, 1919, Charlie Haynie and wife executed to C. M. Martin a certain oil and gas lease to said land. Said lease was duly acknowledged and filed for record in the office of the circuit clerk of Nevada County, Arkansas, on July 28, 1919. J. E. England, Jr., trustee, is now by proper assignment the owner of said lease.

The amount of rent due under the contract above quoted, except the rent due on July 16, 1923, was deposited by the lessee or his assignee to the credit of Charlie Haynie in the Bank of Waldo, Waldo, Arkansas, before the 16th day of July in each year. This suit

was filed on June 18, 1923, and the rent due July 16, 1923, was not tendered to appellants or to Charlie Haynie before it was due.

T. J. Watts had no notice of the existence of the oil and gas lease until after November 1, 1922, other than that the law might charge him with by reason of the filing for record of said lease.

The chancellor found the facts generally in favor of appellees, and further found that J. E. England, Jr., trustee, in order to protect his rights under said oil and gas lease, had in equity the right to pay appellants the balance due them on the purchase price of said land by Charlie Haynie and to redeem said land from the forfeiture made by said Haynie, by depositing the balance of said purchase price and the costs in the registry of the court.

Appellants refused to accept the amount so tendered them, and it was decreed that their complaint be dismissed for want of equity.

The case is here on appeal.

*T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *Elbert Godwin,* for appellants.

*W. T. Saye* and *J. N. Saye,* for appellees.

HART, J., (after stating the facts). It has been well said that there may be a sale of land, an agreement to sell land, and what is generally called an option. An actual transfer of title from the grantor to the grantee by deed, or other instrument in writing, is an executed contract. A contract to be performed in the future, which, if fulfilled, results in a sale, is an executory contract. In other words, an agreement to sell is preliminary to a sale, and is not the sale itself. It may be rescinded by agreement between the parties, and the contemplated sale may never take place.

An option is distinct from a sale of land, or an agreement to sell land. An option, in the proper sense, is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a fixed price within a certain time. 39 Cyc. 1232.

One of the distinguishing features between an executory contract to sell land and an option is that the latter does not bind the second party to purchase the land. *Indiana & Arkansas Lumber & Manufacturing Co.* v. *Pharr,* 82 Ark. 573. On the other hand, a contract in which the second party binds himself unconditionally to pay the purchase price is often, for that reason, held to be a contract to purchase. *Vance* v. *Newman,* 72 Ark. 359, and *Bonanza Mining & Smelter Co.* v. *Ware,* 78 Ark. 306.

When the contract is considered as a whole, we think that it is an executory contract for the sale of land, and not merely an option. The contract recites that T. J. Watts has contracted to sell to Charlie Haynie certain described lands for an amount evidenced by eight promissory notes for $150 each, due October 1, 1917, to October 1, 1924, inclusive. The contract further recites that, upon the payment of each note and the maturity of the last note, T. J. Watts agrees to grant to Charlie Haynie a warranty deed to said land.

While the contract was only signed by Charlie Haynie, it will be seen that it imposed obligations upon Watts as well as upon Haynie. By the language of the contract Haynie promised to pay the notes as they fell due, and Watts promised to give Haynie a warranty deed when the last note was paid. By the terms of the agreement, Watts bound himself to execute a warranty deed to Charlie Haynie upon the payment of the purchase price; and Haynie bound himself to pay the purchase price in the time and in the manner specified in the contract. It is true that the contract contained a provision that, should any one or all of the notes not be paid when due, the contract should be void.

The purpose of this provision, however, was to insure the prompt and faithful performance of the contract by the purchaser, and might be enforced or not at the election of the vendor. It was the undoubted intention of both parties, by inserting this clause, to provide a penalty to insure the prompt performance of the contract

by the purchaser. If Haynie paid the purchase money, no discretion in the matter was left to Watts. On the other hand, if he did not pay the purchase money, he left the option with the other party to avoid the contract or not. Hence, there was no lack of mutuality. Compliance on the part of the purchaser vested him with the power to compel specific performance if the vendor failed to respond to the obligations imposed upon him by the contract. *Dana* v. *St. Paul Investment Co.* (Minn.) 44 N. W. 55, and cases cited, and *Griffith* v. *Stewart,* 31 App. D. C. 29.

It is true that the notes recite that they are given for the rent of the land. Therefore it is insisted that the contract is a lease of land for the time, and for the price specified in the contract, with the option on the part of the lessee to purchase the land during the life of the lease. Such construction as this would give no effect whatever to the language of the contract when considered in its usual and ordinary acceptation. We are of the opinion that, when considered as a whole, the contract was an executory contract for the sale of the land.

As we have already seen, the contract itself was one for the purchase of real estate. The notes in question were executed pursuant to the provisions of the contract, and we do not think that the contract could be changed from an executory contract of sale to an option merely by the recital that the notes were for the rent of the land. *Trieschmann* v. *Blytheville Steam Laundry,* 148 Ark. 237, and other cases cited by counsel for the plaintiff, have no application, because the contracts in those cases, by their express terms, were option contracts, and not executory contracts for the sale of land.

This brings us to a consideration of the rights of J. E. England, Jr., trustee. The record shows that in September, 1922, Charlie Haynie and T. J. Watts agreed to rescind the contract. The record also showed that, on the 16th day of July, 1919, Haynie and wife had executed to C. M. Martin an oil and gas lease to said land, which was duly filed for record on the 28th day of July,

1919. J. E. England, Jr., trustee, became, by proper assignment, the owner of this lease.

A conveyance of oil or gas in its natural state is a conveyance of an interest in land. *Osborn* v. *Arkansas Territorial Oil & Gas Co.,* 103 Ark. 175.

The lease in question contained no covenant against assigning it, and could therefore be assigned to J. E. England, Jr., trustee. *Lawrence* v. *Mahoney,* 145 Ark. 310.

After the oil and gas lease had been executed and filed for record, neither the lessee nor his assignees could be affected by the subsequent agreement of Watts and Haynie to rescind the contract, without their consent.

It is next claimed that the oil and gas lease was forfeited because the lessee failed to pay the rent due on July 16, 1923. This suit was filed on June 18, 1923. The filing of the suit was notice to J. E. England, Jr., trustee, that Charlie Haynie had parted with his interest in the land, and was not entitled to receive the rent. No useful purpose could have been served by tendering the rent to the plaintiffs in this case. Their whole conduct showed that they would not have received it. A tender is not required where it is evident that it will not be accepted. The law does not require vain and useless things. *Dickinson* v. *Atkins,* 132 Ark. 84.

The rights acquired by England under the assignment of the lease to him gave him the right to protect his interest by paying off the balance of the purchase money due by Haynie. The record shows that the oil and gas lease was executed and filed for record before Watts claimed any forfeiture under the terms of the original contract.

The result of our views is that the decree of the chancery court was correct, and will be affirmed.