SOUTHERN LUMBER COMPANY *v.* ARKANSAS LUMBER COMPANY.

Opinion delivered April 9, 1928.

1. ADVERSE POSSESSION—PAYMENT OF TAXES ON UNIMPROVED LAND.— Crawford & Moses' Dig., § 6943, providing that unimproved and uninclosed land shall be deemed to be in possession of the person paying taxes thereon, if he have the color of title, and providing that one paying taxes for seven years can invoke the benefit of the act, is not in itself a statute of limitations, but only makes the payment of taxes under the conditions named in the act a con-structive possession, and it is only by applying thereto the gen-eral statute of limitations that such possession can ripen into a title by limitation.

2. LOGS AND LOGGING—CONVEYANCE OF GROWING TREES.—A convey-ance of growing trees is a conveyance of an interest in the land itself, since growing trees constitute a part of the realty.

3. TAXATION—GROWING TREES.—Under Crawford & Moses' Dig., § 9855, after conveyance of growing trees separating timber from

the land so that the landowner and timber owner had separate estates, such growing trees became property subject to taxation apart from the land.

4. ADVERSE POSSESSION—PAYMENT OF TAXES.—Where a timber deed was executed to plaintiff in 1905,.and he paid taxes on the timber thereon under Crawford & Moses' Dig., § 9855, and there-.after defendant purchased the lands at a tax sale and had a tax deed, and paid the taxes on the land for seven successive years, *held* that such payments did not give defendant any right or title to the growing trees under § 6943, relating to the payment of taxes under color of title as possession.

5. LOGS AND LOGGING—TITLE TO GROWING TREES.—Where a grantor acquired no title to timber on the lands by paying taxes on the lands as wild and unimproved lands under Crawford & Moses' Dig., § 6943, one who acquired the grantor's title had no better title than his grantor.

6. TAXATION—EFFECT OF PAYMENT OF TAXES.—The payment of taxes by one not in the chain of title inured to the benefit of the owner by extinguishing the State's tax lien on the land.

7. ADVERSE POSSESSION—CONTINUOUS PAYMENT OF TAXES.—One who paid taxes on lands as wild and unimproved lands cannot claim to have acquired title under Crawford & Moses' Dig., § 6943, by payment of taxes under color of title, where such payment was not continuous for seven successive years.

8. ADVERSE POSSESSION—PAYMENT OF TAXES.—Where the owner of land paid taxes for certain years, payment of taxes by him extinguished the lien of the State, and a subsequent payment of taxes by another could not give to the latter title to the land by continuous ·payment of taxes under color of title for seven years, under Crawford & Moses' Dig., § 6943.

Appeal from Bradley Chancery Court; *E. G. Hammock*, Chancellor; reversed.

STATEMENT OF THE COURT.

Southern Lumber Company brought this suit in equity against Arkansas Lumber Company for an accounting for the value of certain timber belonging to the plaintiff which was wrongfully cut by the defendant and converted to its own use.

Arkansas Lumber Company filed an answer, in which it denied that the timber in question belonged to the plaintiff, and asserted title by virtue of a conveyance of the lands on which the timber was grown from the

Bradley Lumber Company to it. A cross-complaint was also filed by the Arkansas Lumber Company, asking that the Bradley Lumber Company be made a party defendant to the suit, and that the Arkansas Lumber Company have judgment against the Bradley Lumber Company in the event of a recovery against it by the Southern Lumber Company.

Bradley Lumber Company filed an answer, setting up, among other things, that it and its grantors had obtained title to the timber in question by payment of taxes under color of title for the statutory period on the lands on which the timber was growing, and which lands were wild and unimproved.

The lands involved in the suit comprise 70 acres, and the parties have exhibited a map of the lands on which they are designated by certain colors, which, for convenience, will be used by us in the opinion. The timber deeds to the plaintiff are exhibited with its complaint. Two of these timber deeds were executed by D. V. Stanley and wife to the Southern Lumber Company on June 24, 1905, and were duly acknowledged and filed for record on August 3, 1905.

We shall only set out the description of the lands on which the timber involved in this suit was located. The lands in the two timber deeds are described as being in section 17, township 16 south, range 10 west, in Bradley County, Arkansas. Of these lands the west half of the southeast quarter of the northwest quarter of said section is colored on the map red. The south half of the southwest quarter of the northwest quarter of said section is also colored red. The west half of the northeast quarter of the southwest quarter of said section is also described in the timber deed, but the northwest quarter of the northeast quarter of the southwest quarter alone is involved in this suit, and is colored blue on the map.

On December 13, 1924, C. C. Sharp and wife executed a timber deed to the Southern Lumber Company, which

was duly acknowledged and filed for record on the same day. Among the lands described in this timber deed was the northwest quarter of the southwest quarter of said section 17. This description includes the northwest quarter of the northwest quarter of the southwest quarter of said section, which is colored yellow on the map. It also includes the northeast quarter of the northwest quarter of the southwest quarter of said section, which is colored black. It also includes the west half of the northeast quarter of the southwest quarter, colored blue on the map.

The record shows that the Arkansas Lumber Company claimed title to the above described lands by conveyance from the Bradley Lumber Company. The Bradley Lumber Company claimed title to said land by payment of taxes under color of title for the statutory period. The remaining facts necessary to a decision of the issues raised by the pleadings will be stated and referred to under appropriate headings in the opinion.

The chancellor found that the timber cut from the northwest quarter of the northeast quarter of the southwest quarter of section 17, being the lands colored blue on the map, belonged to the Southern Lumber Company, and that it was entitled to judgment against the Arkansas Lumber Company for the market value of 23,501 feet of pine timber which had been wrongfully cut from this land by the Arkansas Lumber Company. The chancellor also found that the Arkansas Lumber Company was entitled to judgment against the Bradley Lumber Company on its warranty in a sum equal to the amount recovered against it by the Southern Lumber Company. The chancellor also found that the Arkansas Lumber Company was the legal owner of the timber standing on the south half of the southwest quarter of the northwest quarter lying south of Halfway Creek, and the west half of the southeast quarter of the northwest quarter, being the lands colored red on the map, and the north half of the northwest quarter of

the southwest quarter of said section, being the land colored yellow and black on the map, belonged to the Arkansas Lumber Company, and the Southern Lumber Company was not entitled to an accounting for the timber cut on these lands. A decree was entered of record in the chancery court in accordance with the findings of the chancellor, and all parties to the suit prayed and were granted an appeal to this court.

*Fred L. Purcell,* for appellant.

*David A. Bradham, J. G. Williamson, Lamar Williamson* and *Adrian Williamson,* for appellee.

HART, C. J. Counsel for appellees seek to uphold the decision of the chancery court as to the lands colored red on the map under our statute making payment of taxes under color of title for seven years constructive adverse possession of wild and unimproved lands. The Legislature of 1899 passed the following act:

"Unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act." (Crawford & Moses' Digest, § 6943).

This statute has been frequently construed by this court, and it has been held that, under the statute, limitations commence to run from the date of the first payment of taxes, and the statutory bar is complete at the end of seven years from that date, provided seven payments have been made in succession, and three of them subsequent to the passage of the act. *Updegraff* v. *Marked Tree Lumber Co.,* 83 Ark. 154, 103 S. W. 606; *Taylor* v. *Leonard,* 94 Ark. 122, 126 S. W. 387; and *Greer* v. *Vaughan,* 96 Ark. 524, 132 S. W. 456.

The Bradley Lumber Company purchased these lands at tax sale and received a tax title thereto. It is

conceded that the tax deed is void, but it is claimed that it gave the Bradley Lumber Company color of title, and that it acquired title under the statute above set out by payment of taxes under color of title on the land for seven successive years, the same being wild and unimproved. This would be true if there was nothing else in the case.

The record, however, shows that the Southern Lumber Company purchased the timber on said land from D. V. Stanley, who had the paper title to the lands at that time; and on June 24, 1905, D. V. Stanley and wife executed a timber-deed to the Southern Lumber Company to the pine timber on said lands. The payment of taxes by the Bradley Lumber Company was made after the execution of the timber deed by D. V. Stanley and wife to the Southern Lumber Company, and the record shows that the Southern Lumber Company had paid taxes on the timber embraced in its timber deed ever since the execution of said deed. This prevented the Bradley Lumber Company from acquiring title under the act of 1899 above set forth. This court has said that the statute in itself is not a statute of limitations. It only declares that the land shall be deemed to be in possession of the person paying taxes thereon under color of title. It only makes the payment of taxes under the conditions named in the act a constructive possession; and it is only by applying thereto the general statute of limitations that such possession, like actual possession, can ripen into title by limitation. *Taylor* v. *Leonard,* 94 Ark. 122, 126 S. W. 387.

In *Greer* v. *Vaughan,* 96 Ark. 524, 132 S. W. 456, it was said that a compliance with the provisions of this statute constitutes in such person paying said taxes upon such character of land mentioned therein a constructive possession which, like adverse possession, ripens into a perfect title and creates in such person a complete investiture of the title thereto.

The record shows that D. V. Stanley was the owner of the record or paper title of the land colored red on

the map, and, on June 24, 1905, executed a timber deed to the Southern Lumber Company to the pine timber growing on said land. The growing trees constituted a part of the realty, and their conveyance by Stanley to the Southern Lumber Company was a conveyance of an interest in the land itself. *Graysonia-Nashville Lumber Company* v. *Saline Development Company,* 118 Ark. 192, 176 S. W. 129, and cases cited; and *Chicago Land & Timber Company* v. *Dorris,* 139 Ark. 333, 213 S. W. 759.

It is well settled in this State that growing trees may be severed from the land itself, and that the severance is accomplished by a conveyance of the timber, or by a conveyance of the land with a reservation or exception as to the timber. The ownership of the growing trees, after severance, is to all intents and purposes the same as the ownership of land, and this ownership is attended with all the attributes peculiar thereto. In recognition of this rule, the Legislature of 1905 passed an act for the assessment of timber which has been sold separately and apart from the land on which it stands. Crawford & Moses' Digest, § 9855. By the execution of the timber deed from Stanley to the Southern Lumber Company, two separate and distinct estates were created. There was no community of interest between the Southern Lumber Company, which became the owner of the timber, and D. V. Stanley, who remained the owner of the land. Each had a separate estate, and each was separately subject to taxation. After the severance from the land by the timber deed, the growing trees became property subject to taxation under art. 16, § 5, of our Constitution, and the Southern Lumber Company assessed them under § 9855 of Crawford & Moses' Digest, and thereafter paid taxes on them. Thereafter the Bradley Lumber Company purchased the lands at a void tax sale and began paying taxes on them as wild and unimproved lands. It acquired title to the land itself by the payment of the taxes on it under color of title for seven consecutive years, under the principles of law announced in

the cases above cited; but, there being no community of interest between the owner of the land and the owner of the growing trees, the payment of taxes on the land for seven successive years did not give the person paying such taxes any right to or title in the growing trees. The reason is that the owner of the trees under the timber deed and the person paying taxes on the land itself under color of title were paying taxes on separate estates, because each was the subject of ownership and taxation.

By analogy, this principle has been applied in the case of minerals in place. This court, following the general rule, has held that a conveyance of oil or gas in place is a conveyance of an interest in land. *Watts* v. *England,* 168 Ark. 213, 269 S. W. 585. In a note to 140 Am. St. Rep., at page 952, it is said that, after severance, the surface and minerals are held by separate and distinct titles in severalty, and each is a freehold estate of inheritance. Each may be conveyed by deed or pass by inheritance, and has all of the attributes and incidents peculiar to the ownership of land. *Ames* v. *Ames,* 160 Ill. 599, 43 N. E. 592; *New Jersey Zinc Co.* v. *New Jersey Franklinite Co.,* 13 N. J. Eq. 322; *West Point Iron Co.* v. *Reymert,* 45 N. Y. 703; *Gill* v. *Fletcher,* 74 Ohio St. 295, 113 Am. St. Rep. 962, 78 N. E. 433; *Lillibridge* v. *Lackawanna, etc. Co.,* 143 Pa. 293, 24 Am. St. Rep. 544, 22 Atl. 1035, 10 L. R. A. 627; *Hutchinson* v. *Kline,* 111 Pa. 564, 49 Atl. 312.

By analogy, the same rule would apply here, and we are of the opinion that the Bradley Lumber Company acquired no title to the timber on the lands colored red on the map by the payment of the taxes on the lands themselves as wild and unimproved lands after the execution of the timber deed by Stanley to the Southern Lumber Company; and of course the Arkansas Lumber Company acquired no better title than its grantor, Bradley Lumber Company.

This brings us to a consideration of the lands colored black and yellow on the map. The Southern Lumber

Company acquired title to the growing pine trees on these lands by a timber deed from C. C. Sharp and wife on December 13, 1924. C. C. Sharp at that time had the record or paper title to these lands. These lands were wild and unimproved, and it is claimed that the Bradley Lumber Company had acquired title thereto by the payment of taxes on the lands under color of title for seven successive years before the timber was conveyed by Sharp to the Southern Lumber Company. We have examined the record, and do not think it bears out the contention of counsel for appellees. The record shows that the taxes for 1904 were paid by M. L. Gardner, Jr., who was not in the chain of title, and his payment inured to the benefit of the owner by extinguishing the State's tax lien on the land. *France* v. *Butcher*, 165 Ark. 312, 264 S. W. 931. For the years 1905, 1906, 1907, 1908, 1909 and 1910 the record shows that the Bradley Lumber Company paid the taxes. In 1911, however, H. L. Sharp paid the taxes, and this prevented the payment by the Bradley Lumber Company for seven years in succession. The tax claimant can only invoke the statute where the payment has been continuous for seven successive years. After that time the taxes appeared to have been paid for the years 1912 to 1925, inclusive, by the owner of the land, and also by the Bradley Lumber Company. The owner of the land appears first as having paid the taxes, and the payment by him extinguished the tax lien of the State; and in no sense could it be said that the payment by the Bradley Lumber Company, after the taxes had been paid by the owner of the land, gave it title to the land by continuous payment of taxes under color of title for seven consecutive years, under the act of 1899 above set out, which is § 6943 of Crawford & Moses' Digest. The Arkansas Lumber Company acquired title to these lands by warranty deed from the Bradley Lumber Company, and, so far as the Arkansas Lumber Company is concerned, it had no greater rights than those possessed by its grantor.

We now come to a consideration of the land colored blue on the map. The chancellor found the title to the timber on this land to be in the Southern Lumber Company. An examination of the record will show that these lands are wild and unimproved, and that the Bradley Lumber Company commenced paying taxes on them in 1905, but there was a break in the payment after three years. Thus it will be seen that the Bradley Lumber Company had not acquired title to this land by a continuous payment of taxes under color of title for seven consecutive years, under the provisions of § 6943 of the Digest. The Southern Lumber Company acquired title to this timber by a deed from C. C. Sharp on the 13th day of December, 1924. He and his grantors had the paper title to the lands, and the record does not show seven years' continuous payment of taxes in succession by the Bradley Lumber Company, or by any one else, prior to the execution of the timber deed on December 13, 1924. Since the execution of that deed the Southern Lumber Company has paid the taxes on the timber under an assessment made under § 9855 of the Digest.

The result of our views is that the decree of the chancery court giving the Southern Lumber Company a judgment for the value of the timber cut by the Arkansas Lumber Company on the lands colored blue should be affirmed; and, in so far as the timber on the rest of the lands involved is concerned, the decree of the chancellor should have been in favor of the Southern Lumber Company for all the pine timber cut by the Arkansas Lumber Company and judgment should have been rendered in favor of the Arkansas Lumber Company against the Bradley Lumber Company on its warranty for the amount recovered by the Southern Lumber Company against the Arkansas Lumber Company. It follows that the decree must be reversed, and the cause will be remanded with directions to enter a decree in favor of the Southern Lumber Company against the Arkansas Lumber Company for the market value of all the growing

pine timber cut by it on the lands described in the complaint, and that the Arkansas Lumber Company should have judgment over against the Bradley Lumber Company for the same amount, and for further proceedings in accordance with the principles of equity and not inconsistent with this opinion. It is so ordered.