MATTHEWS *v.* PREWITT.

4-9736                                   248 S. W. 2d 353

Opinion delivered May 5, 1952.

*Reinberger & Eilbott,* for appellant.

*Brockman & Brockman* and *G. Lawrence Blackwell,* for appellee.

GRIFFIN SMITH, Chief Justice. Key questions are whether Memphis Johnson, a colored man, had a 90-day option to repay $3,500 advanced by Albert and Geraldine E. Matthews, and—if the right subsisted—did B. C. Prewitt and G. T. Neal acquire Johnson's interest in the real property contract around which the controversy centers.

South Bend Plantation in Lincoln county was subdivided and offered at auction January 27, 1950. A 372-acre tract was struck off to Johnson for $18,600. Terms of the sale were that 35% of the accepted bid should be deposited with a designated bank at Pine Bluff, the balance to be paid, or secured in a manner satisfactory to the seller, within thirty days.

Johnson did not have money necessary to carry out his contract. Matthews advanced it, took title to the entire tract, and wrote Johnson a letter the day after

the sale in which the 90-day period was mentioned.[1]  This followed a trip Johnson and Matthews made to Simmons National Bank where Matthews borrowed the money. Following negotiations with the bank Johnson and Matthews went to the law office of Jay W. Dickey, who represented South Bend Plantation, Inc., owner of the land.  It was ascertained that South Bend would not "split" title to the tracts as shown by the auctioneer's plat; that Johnson did not want the full acreage he had contracted for; that Matthews was anxious to acquire 172 acres, and that mutual interests would be served if Johnson took the west 200 acres.  Matthews made the down payment of $6,500 on the tract as a whole and a deed was executed to him and his wife.  They, in turn, conveyed the property by separate instruments to trustees for General American Life Insurance Company and South Bend Plantation for $12,090.[2]

The persons upon whom Johnson had relied for funds failed him and a disappointing interval ensued. C. H. Holthoff, who owned 14,000 acres, a gin, and had other property, testified that he was willing to lend Johnson anywhere from $3,500 to $10,000 with the land as security.  Matthews testified that between March 1st and 10th he saw Johnson frequently and asked what progress was being made toward raising the money. Johnson replied, in effect, that those he had relied upon had failed him.  The Negro then said, "I can't get any furnishing, so will have to give up my option and rent from you."  Matthews takes the position that this was a voluntary relinquishment of any rights Johnson had.

Holthoff testified that on April 22d he assured Johnson that a loan would be made in his favor.

---

[1] The letter was dated Jan. 28, was written from Pine Bluff, and addressed to Johnson at Gould, Ark.—"This is to state that I have paid as a down payment on the west 200 acres  .  .  .  the sum of $3,500, and you are to repay me this amount within 90 days.  In the event you do not make this payment all right, title and interest you may have in said property will be released and this letter will be cancelled and held for naught.  However, in the event you pay the $3,500 to me within 90 days from date hereof, you will receive conveyances to your interest in said property herein above mentioned, subject to indebtedness now existing on said property at the time of the conveyance."

[2] General American was secured for $8,060, and South Bend for $4,030.

Matthews is in accord with Johnson that they agreed upon a division of the property on a basis of 172 acres to Matthews. Condition of the property was known to Johnson who had been a renter for years. While Johnson was seeking financial assistance in circumstances indicating that he might not succeed, it became necessary that planting operations begin. To this end Johnson arranged with Holthoff for a line of credit covering necessary supplies, $2,000 having been mentioned.

Appellants concede that in considering Johnson's bid for the entire tract its value was treated as $50 per acre. Therefore 35% of $10,000 representing the west 200 acres would be $3,500.

There are circumstances suggesting an understanding between Johnson and Matthews prior to Johnson's bid. But irrespective of that possible relationship, it is clear that Matthews wanted the east 172 acres and that he bargained with Johnson for the division. It is now contended by appellants that the letter copied as footnote No. 1 was not an option—or, conversely, if the language would ordinarily be construed as an option the offer is unenforcible for want of consideration. Since performance of a gratuitous offer cannot be enforced, appellants think that in the circumstances a court of equity should not apply coercive methods.

We agree with appellants that an option to purchase land is not necessarily a contract to sell. *Swift* v. *Erwin*, 104 Ark. 459, 148 S. W. 267. But in the case at bar the parties were dealing with matters of mutual concern. When Matthews was asked why he signed "that particular piece of paper" (identifying the letter) he replied: "That was the last day for the money to be paid, and if I hadn't [made] the down payment for him, neither of us would have gotten the land." Later Matthews said: "We were supposed to split the land 50-50— were going to split it half in two and 'half' the buildings." Matthews did not, during the 90-day period, give Johnson "any writing or any instrument revoking the obligation under the option contract."

Our conclusion is that the letter was an option predicated upon sufficient consideration, and that Johnson had 90 days within which to exercise the rights conferred. *Watts* v. *England,* 168 Ark. 213, 269 S. W. 585.

There is nothing in the testimony or in the letter indicating that Matthews dealt with Johnson on the basis that he (Johnson), and Johnson only, should own and occupy the west 200 acres, or that the right to exercise the option was purely personal. The assignment to Prewitt and Neal was written on the margin of the letter sent by Matthews to Johnson. The suit resulting in this appeal was brought by Johnson for specific performance after Prewitt and Neal undertook within the 90-day period to pay Matthews the $3,500. Matthews' refusal resulted in a deposit with the court registry and an impleadment by Prewitt and Neal. Johnson testified that he was to receive $550 from the assignees if the suit terminated favorably, and Prewitt and Neal do not contest this obligation.

We affirm the decree, including the Chancellor's finding that Matthews and his wife were partners respecting the purchase. But because title to real property is involved our mandate will show that the rights of General American, South Bend, and Johnson are to be preserved as set out by the trial court. As between the interveners and Johnson, rights of the former are contingent upon payment of the assignment consideration.