[No. 16583. Department One. February 3, 1922.]

JOHN HUFFMAN et al., Appellants, v. ELLEN MINING COMPANY et al., Respondents.[1]

EXECUTION (5)—PROPERTY SUBJECT—PERSONAL PROPERTY—INTEREST IN PUBLIC LANDS. A locator's interest in an unpatented mining claim is personalty rather than realty, and hence capable of sale under execution as personal property.

CORPORATIONS (52)—STOCK—CONSIDERATION FOR ISSUANCE—ESTOPPEL TO ALLEGE INVALIDITY. One holding a valid subsisting lien against mining claims, does not lose it by an invalid attempt to sell the property under foreclosure; and a sale of the claims to a corporation in consideration of corporate stock would transfer an equitable right to the lien and would afford at least partial consideration for a transfer of the corporate stock.

SAME (88)—STOCKHOLDERS—SUITS ON BEHALF OF CORPORATION—ESTOPPEL. In an action by stockholders to cancel an issuance of stock to an individual on the ground of failure of consideration in that the shares had been issued to him in exchange for mining claims which he as a judgment creditor had acquired under an invalid foreclosure of a mining lien, an offer to reimburse him to the extent of his judgment would not place him in statu quo, but he would be entitled to a reconveyance of the mining property subject to the corporation's after acquired title, so that he could exercise his right of resale.

SAME (88). Any principle of estoppel operative against a corporation applies against stockholders who exercise the right to sue on the refusal of the corporation to bring suit.

[1]Reported in 204 Pac. 197.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered January 21, 1920, upon findings in favor of the defendants, in an action to cancel corporate stock, tried to the court. Affirmed.

*Mulligan & Bardsley,* for appellants.

*Del Cary Smith* and *C. W. Greenough,* for respondents.

FULLERTON, J.—This action was instituted by the appellants, plaintiffs below, to set aside and cancel certain corporate stock of the respondent Ellen Mining Company, issued to the individual respondents. In the complaint it is alleged that the stock sought to be set aside and cancelled was issued because of fraud and deceit practiced upon the corporation by the respondent Harsh, the deceit consisting of his misrepresentation as to his title to the property conveyed to the corporation, which furnished the consideration for the stock. On a trial of the facts, after issue joined, the court ruled against the appellants' contentions and entered a judgment confirming the title to the stock in the respondents. It is from this decree that the appeal is prosecuted.

From the facts developed on the trial, it appears that a corporation called the Silver Lead Mining Company held, by assignment from the original locators, and was in possession of, certain unpatented mining claims located in the Metaline Mining district, in Pend Oreille county; that the corporation employed the respondent Harsh to perform the assessment work necessary to be performed in the year 1913 to prevent the claims from lapsing; that Harsh performed the work, but was not paid for his services, and in August, 1914, filed a lien upon the claims in the sum of $368; that thereafter he foreclosed the lien, obtaining a de-

cree of foreclosure against the corporation and an order of sale of the property for the amount of his claim, with interest and costs. It further appears that, in executing the decree and order of sale, the sheriff, into whose hands the decree and order was placed for execution, levied upon the claims, advertised them for sale, and sold them as personal property is sold on execution under the statutes of this state; that, based upon the title thus obtained, Harsh, his co-respondents joining with him, organized the respondent corporation and conveyed to it, in consideration of its entire issuance of stock, the mining claims; that of this stock Harsh donated about one-half to the treasury and reserve fund of the corporation as the basis for a working capital, and that he and his associates retained the remainder. It further appears that certain of this treasury stock was issued to the holders of stock in the original corporation in exchange for the stock of that corporation, and certain of it was sold purchasers in the open market, and that the appellants are stockholders in the Ellen Mining Company, acquiring their stock by one or the other of these means. It also appears that, at a stockholders' meeting of the Ellen Mining Company held sometime after its organization, the question was mooted whether the corporation had title to the mining claims, and that a committee was appointed to obtain legal advice upon the question and to take such steps as might be found necessary to perfect the title if it should be found imperfect. What the advice of the attorney consulted was does not appear, but it appears that, through his assistance, a deed from the Silver Lead Mining Company, conveying all its right, title and interest in and to the mining claims to the Ellen Mining Company, was obtained and recorded.

Turning to the contentions of the appellant, the first is that there was actual fraud in the transaction through which Harsh obtained the capital stock of the Ellen Mining Company. This contention, however, does not require argument. The trial court found that the parties to the transaction acted in the utmost good faith, and we find nothing in the evidence which even tends to a contrary conclusion.

The further contention is that there was constructive fraud, in that the stock was acquired by Harsh without consideration. This contention is founded on the claim that Harsh had no title to the mining claims which he transferred to the corporation. It is argued that a locator's interest in an unpatented mining claim is real property, which must be sold under execution as real property is sold, and since the sale in this instance was made as a sale of personal property, no title passed to Harsh by the sale, and hence Harsh had no title which he could convey to the corporation. Counsel have cited a number of authorities from other jurisdictions as supporting the rule, but these we shall not review. Many of them are made to rest on statutes local to the jurisdiction in which the sales were had, and in so far as the others support the contention, they are contrary to our own case of *Phoenix Mining and Milling Co. v. Scott*, 20 Wash. 48, 54 Pac. 777. In that case we held that the possessory right which a person acquired by the location of a mining claim, under the statutes of the United States, is not such an interest as will support the lien of a general judgment within the meaning of our code making such a judgment a lien upon "the real estate of the judgment debtor." If this be the rule, it would seem necessarily to follow that the interest acquired is personal rather than real, and being personal, it could be sold under execution as personal property is so sold.

But it is not necessary to rest our judgment on the foregoing reason, as there is another which estops the appellants from asserting want of consideration. Harsh had a valid subsisting lien upon the claims. This he foreclosed, and not only obtained a judgment against the then owner of the claims, but a decree and order directing the sale of the specific property to satisfy the judgment. This right of sale would not be exhausted by an invalid attempt to exercise it, and if the sale actually made was invalid, the right still existed in Harsh. He possessed the right at the time he made the conveyance of the claims to the corporation, and the conveyance then made, while not in form a conveyance of the decree and the right of sale thereunder, was sufficient in equity to pass to the corporation Harsh's beneficial interests therein. These interests were of value, and their acquirement by the corporation manifestly furnished some consideration for the corporate stock transferred to Harsh. It may be that it was only a partial consideration, and it may be that, did the evidence justify it, the court would ascertain the value of the interest in the property actually conveyed and the value of the interest had it been what the parties all supposed and intended it to be, and allow a proportional recovery, but the evidence was not directed to that end. The evidence was directed to a showing of an entire failure of consideration. On this question the evidence fails, and as there is nothing on which a partial recovery can be based, no form of relief can be granted.

On the trial of the cause the appellants offered to reimburse Harsh to the extent of his judgment. But this would not, as counsel argues, fully reimburse him or place him in *statu quo*. Nothing short of a re-conveyance of the property, subject to the corporation's after-acquired title, so that he could exercise his right

of resale, would place him in that position. This was not tendered him, and the courts will not compel him to accept anything less.

We have not overlooked the fact that this is a suit by stockholders of the corporation and not by the corporation itself. But the right of stockholders to sue in cases of this sort arises from the fact that the corporation itself refuses to sue. The stockholders are but exercising a right which the corporation refuses to exercise, and their rights are no greater than the rights of the corporation. Any reason, therefore, which would estop the corporation from recovery will estop them.

The judgment is affirmed.

PARKER, C. J., MITCHELL, TOLMAN, and BRIDGES, JJ., concur.