[No. 20142.  *En Banc.*  January 4, 1927.]

JOHN A. HEMRICH, *as General Receiver for Hill Syrup Company, Appellant,* v. NATIONAL BANK OF COMMERCE, *Respondent.*[1]

[1] CORPORATIONS (224)—RECEIVERS (74)—INSOLVENCY OF CORPORATION—ACTIONS BY RECEIVER ON BEHALF OF STOCKHOLDERS.  The receiver of a corporation suing on behalf of the stockholders to recover money wrongfully diverted by the officers has no greater right than the corporation itself had.

[2] CORPORATIONS (23, 224)—RECEIVERS (74)—INSOLVENCY OF CORPORATION—ACTION BY RECEIVER ON BEHALF OF CREDITORS.  The receiver of an insolvent corporation suing on behalf of present creditors to recover money wrongfully diverted by the officers, is not entitled to recover where all of the creditors existing at the time of the wrong have been fully paid and the present creditors did not rely upon any liability of the defendant as an asset of the company nor extend credit thereon.

[1]Reported in 251 Pac. 774.

[3] BANKS AND BANKING (23)—PAYMENT OF CHECKS—AUTHORITY OF BANK. A resolution authorizing the president of a corpora-tion to sign checks on behalf of the company does not give any notice or instruction as to disposition of the proceeds of the checks or render the bank liable for any diversion of the funds.

Appeal from a judgment of the superior court for King county, Jones, J., entered January 16, 1926, upon findings in favor of the defendant, in a receiver's action to recover bank deposits. Affirmed.

*James R. Chambers, Hayden, Langhorne & Metzger* and *Troy & Yantis,* for appellant.

*Kerr, McCord & Ivey, Donworth, Todd & Holman* and *Wright, Froude, Allen & Hilen,* for respondent.

MAIN, J.—The plaintiff, as receiver for the Hill Syrup Company, a corporation, brought this action to recover funds which had been on deposit with the defendant bank belonging to the Hill Syrup Company, but withdrawn on checks of the company signed by W. E. Sander, the president and manager thereof, in payment of his personal indebtedness. The cause was tried to the court without a jury and resulted in findings of fact and conclusions of law denying a recovery. From the judgment entered dismissing the action, the plaintiff appeals.

The preliminary facts will be found in the case of *Hill Syrup Co. v. Frederick & Nelson,* 133 Wash. 155, 233 Pac. 663, to which reference is here made.

In the case now before us the findings of the trial court were in part as follows:

"VIII.

"That the custom and practice of said W. E. Sander during the time he was connected with the Hill Syrup Company in issuing company checks in payment of his personal obligations as aforesaid was known to, ac-

quiesced in and ratified by all the members of the board of trustees of said company.

"IX.

"That the books of account of the company were at all times open to the inspection of its officers and stockholders, and were frequently examined by the members of its board of trustees.

"X.

"That of the checks that constitute the basis of the first cause of action, the following checks, to-wit:

Check dated January 20, 1921, in the sum of . $7,000.00
Check dated June 20, 1921, in the sum of . . .  6,000.00
Check dated December 15, 1919, upon which
   recovery is sought in the sum of . . . . . . . . .  1,750.00
Check dated March 1, 1919, in the sum of . . . 4,000.00

were each and all given in payment of notes of W. E. Sander, the proceeds of which notes had at the time of the making thereof been deposited to the credit of the Hill Syrup Company, the transactions being that the said W. E. Sander had lent his personal credit to said company.

"XI.

"That the second cause of action alleged in said complaint was withdrawn by the plaintiff.

"XII.

"That the checks which form the basis of the third cause of action alleged in said complaint were each and all of them drawn by said W. E. Sander as president of the Hill Syrup Company to various individuals in accordance with the custom hereinabove set forth, and said other trustees either knew or by the exercise of reasonable diligence and care should have known of the issuance of such checks and the continued practice of Sander to pay his personal obligations out of company funds as hereinabove set forth.

"XIII.

"That at the time the checks referred to in the first and third causes of action alleged in said complaint were issued by the Hill Syrup Company and honored by the defendant, said Hill Syrup Company was a going concern, had a large and extensive business and was

meeting all its obligations as they became due. During all of said period of time the bank had no intimation nor knowledge that the company was in financial difficulties, and had no reasonable cause to believe that the corporation was other than what it appeared to be and honored said checks in the usual course of its business.

## "XIV.

"That from time to time as the checks referred to in plaintiff's complaint were returned to the defendant bank, the said bank in turn delivered them to the Hill Syrup Company or its agents, and likewise monthly delivered to such company or its agents written statements of the condition of the bank account of said company, showing the checks withdrawn, deposits made and balance remaining, which said monthly statements contained the specific direction to the depositor to examine the statements and make complaint as to any error within ten days from the date of the delivery of such statement and cancelled checks, a form copy of which statement is in evidence as defendant's Exhibit 14. No complaint was ever made to the defendant by the company or its agents on account of defendant's honoring the checks now sued upon.

## "XV.

"That during all the time referred to in the plaintiff's complaint the Hill Syrup Company kept on deposit with the defendant a written authorization, subscribed to by the proper officers of said company authorizing said W. E. Sander to sign checks in behalf of the company and directing the defendant to honor such checks.

## "XVI.

"That during July, 1921, the company became financially involved and thereupon J. Charles Kerr and J. W. Vaux, the principal stockholders outside of Sander, questioned the propriety of the action of said Sander in having issued company checks in payment of his personal obligations, and claimed the financial embarrassment of the company was due in a large measure to Sander's action in having issued said checks; said Kerr and Vaux thereupon demanded that Sander surrender his stock in the company and sever

his connection with it; that a meeting was held during the summer of 1921 in the office of Kerr, McCord and Ivey, attorneys, at which meeting Sander delivered all his stock in the company to J. A. Kerr as trustee for the other stockholders and said stock was thereafter cancelled.

### "XVII.

"That later in 1921 said company employed certified public accountants to examine its books, which accountants submitted to the company a written report showing among other things all company checks issued by Sander in 1921 in payment of his personal obligations; that about said time the board of trustees of the company passed a resolution authorizing its president to consult with the company's attorney relative to the bringing of a civil action or criminal action or both against W. E. Sander; that the president and other officers of the company did consult with the company's attorneys and as a result negotiations for a settlement of the claims of the company against said Sander were entered into; that in said negotiations Sander was represented by his attorney Carl E. Croson; that such negotiations resulted in an agreement being made by the said attorney whereby the stock in the company previously delivered by Sander to J. A. Kerr as aforesaid should be cancelled; that the company should retain all property previously conveyed to it by Sander and in addition that Sander should convey certain additional real estate to the company, should pay a note of the company for $1,000.00 then held by the Seattle Hardware Company, and should pay the company in cash the additional sum of $750.00.

### "XVIII.

"That Sander complied with said agreement and thereupon there was executed and delivered to him a written instrument signed in the company's name by its president and secretary, which was also signed by J. Charles Kerr and J. W. Vaux, a copy of which is attached to the answer to the second amended complaint herein and marked Exhibit 'A' thereto.

## "XIX.

"That shortly after the time when W. E. Sander severed his connections with the Hill Syrup Company one John A. Hemrich, now receiver and plaintiff herein, became interested in said company for the purpose of effecting a reorganization of its business and affairs, and purchased a controlling interest therein, paying for such interest partly in cash and partly by his promissory notes. At said time a compromise agreement was entered into between the company and all its creditors including the defendant herein, whereby the creditors agreed to accept fifty per cent. of the amount of their claims as payment in full, a copy of which agreement of settlement is attached to the answer to the second amended complaint herein marked Exhibit 'C' thereto.

## "XX.

"That at the time of the making of said compromise agreement the company was indebted to the defendant in banking obligations in the full sum of Fifty-three Thousand Three Hundred Dollars ($53,300.00), as collateral to which the defendant held some securities and after the liquidation of such securities a net indebtedness in favor of the defendant remained in the sum of Thirty-eight Thousand Two Hundred Seven and 04/100 Dollars ($38,207.04), and pursuant to the terms of said settlement agreement defendant was entitled to receive from the company the sum of Nineteen Thousand One Hundred Three and 52/100 Dollars ($19,-103.52). On or about May 26, 1922, said company through its duly authorized agents represented to the defendant that its assets and its financial condition were such that defendant should make a further concession to it beyond said fifty per cent, reduction in the sum of Three Thousand One Hundred Thirty-nine and 06/100 Dollars ($3,139.06), to which the defendant agreed, and on or about June 1, 1922, in fulfillment of said agreement the company executed and delivered to the defendant its promissory notes in the sum of Sixteen Thousand Nine Hundred Thirty-four and 46/100 Dollars ($16,934.46), which notes were thereafter paid. That during the period of the negotiations both with

respect to the original agreement whereby defendant consented to compromise its claim to the amount of fifty per cent. and in the later negotiations where an additional reduction was made no claim was made by the company nor anyone representing it that it had or intended to press any claim against the defendant on account of the matters complained of in the third amended complaint on file herein, but on the contrary it was assumed both by the defendant and by the. agents then representing the company that the final settlement agreed upon constituted a finality of all pending claims or transactions between the company and the defendant, and the defendant would not have entered into such compromise agreements had it known, been informed or had reason to believe that the company would make the claims now being pressed against it by the plaintiff herein.

### "XXI.

"That upon the reorganization of the company in the autumn of 1921 all existing creditors of the company were paid, and the company became and was for a period of time a solvent and going concern, and its subsequent financial difficulties were due to loss in operations. There are now no existing creditors of the company who were creditors at the time of any of the acts complained of by the plaintiff herein, and there are no creditors of the company who became such in reliance upon any claim which the company might have against the defendant herein, and no existing creditors have been in anywise deceived, misled or defrauded actually or constructively on account of the acts complained of by the plaintiff herein.

### "XXII.

"After the reorganization of the company in the autumn of 1921, Mr. Hemrich assumed control of the company and was in charge of it down to the time when a receiver was appointed. The company business, however, resulted in a loss, and sometime after said period of reorganization it was necessary for the company to borrow money in order to sustain itself. Thereupon Mr. Hemrich and his mother indorsed the com-

pany notes at the bank for the purpose of obtaining the necessary loan, and the funds derived from such notes were used in the company business and in the discharge of its existing obligations. When said notes became due at the bank Mr. Hemrich and his mother were required by the bank to pay them.''

An examination of the evidence has led us to the conclusion that the above findings are sustained thereby.

In the case of *Hill Syrup Co. v. Frederick & Nelson*, *supra*, the action was waged in the name of the corporation, and it was there held that no recovery could be had. In the present case the action is prosecuted by the receiver. The controlling facts in the two cases are very much alike. In the *Hill Syrup Co. v. National City Bank*, 133 Wash. 696, 233 Pac. 669, the rule of the *Frederick & Nelson* case was recognized, but a recovery was there sustained, because the facts in that particular case did not show that the company was negligent in permitting the practice of Sander, in paying his individual debts with corporate funds, to begin and continue.

Much of the appellant's brief in the present case, if we have gathered the thought thereof correctly, is an argument against the holding in the *Frederick & Nelson* case. We have again considered the question, but are not disposed to depart from the holding there made.

[1] The questions in this case are, therefore, whether the receiver, suing on behalf of the stockholders and creditors, has a greater right to maintain an action upon facts which are essentially the same than did the corporation when the action was prosecuted in its own name.

First, as to the stockholders. This is not a case where the corporation had refused to sue and for that reason the stockholders brought the action, but is a

case where the corporation had brought an action and failed to recover, and then the receiver seeks to recover for the benefit of the stockholders. It seems plain that the receiver would have no greater rights than would the stockholder suing in his own behalf if the corporation had refused to sue. In *Ninneman v. Fox*, 43 Wash. 43, 86 Pac. 213, a stockholder brought an action against third persons where the corporate authorities had not refused to act in the matter, and it was there said:

"All the authorities agree that a stockholder, as such, cannot maintain an action against a third person, either for a breach of a contract between such third person and the corporation of which he is a stockholder, or for an injury to the corporation or its property. All such wrongs must be redressed by the corporation itself and in the corporate name."

In *Huffman v. Ellen Mining Co.*, 118 Wash. 546, 204 Pac. 197, it is said:

"We have not overlooked the fact that this is a suit by stockholders of the corporation and not by the corporation itself. But the right of the stockholders to sue in cases of this sort arises from the fact that the corporation itself refuses to sue. The stockholders are but exercising a right which the corporation refuses to exercise, and their rights are no greater than the rights of the corporation. Any reason, therefore, which would estop the corporation from recovery will estop them."

In *Marcovich v. O'Brien*, 63 Ind. App. 101, 114 N. E. 100, it is said:

"It follows that appellant, when he filed his petition, was, in a sense, already in court. That is to say, the corporation in which he is a stockholder was in court, and, generally speaking, the stockholders of a corporation, for the purposes of all litigation growing out of the relations between such corporation and a third person, surrender their personal or individual entity to the corporation in which they are stockholders, and when such corporation is properly in court, the stock-

holders are, under the law, also in court, so far as is
necessary for the purpose of adjudicating all matters
incident to the issues tendered between such corpora-
tion and such other party or parties litigant.''

The appellant, as receiver, has no greater right to
sue on behalf of the stockholders than the corporation
itself in the *Frederick & Nelson* case.

[2]    The next question is as to whether the receiver
can maintain the action on behalf of creditors, even
though the corporation itself failed in the case referred
to. It will be admitted that the corporation's property
and assets are a trust fund for the benefit of creditors
and that, as a general rule, a creditor, whether he be
prior or subsequent to the diversion of the corporation
property or assets, is protected by that doctrine. It
appears that, in the year 1921, the Hill Syrup Company
was financially embarrassed. Sander, who had been
the president and manager of the company, surren-
dered his stock and severed his connection therewith.
Negotiations took place with reference to the corpora-
tion continuing in business. John A. Hemrich, who is
the receiver in this case, and his mother advanced
twenty thousand dollars and came into the company.
Others advanced five thousand dollars. The then credi-
tors, of which the respondent was one, who held claims
against the company for more than the sum of one
hundred dollars, agreed to take fifty per cent on the
dollar for their claims. The claims of less than one
hundred dollars were paid. Those agreeing to take
fifty per cent of the amount of their claims were paid
in three installments, the first installment out of the
twenty-five thousand dollars mentioned. For the other
two installments, Mr. Hemrich and his mother provided
the money. After the reorganization of the company
and the reducing of its capital stock to sixty thousand
dollars, Mr. Hemrich became the controller and the

director thereof.  After the decision in the *Frederick &
Nelson* case, he was appointed receiver in this case.
There are some minor claims in the case other than
those of Mr. Hemrich and his mother.

, It appears in this action that, at the time the twenty
thousand dollars was advanced, Mr. Hemrich investi-
gated the company's affairs, as he naturally would be-
fore investing that amount of money, and knew at that
time that Sander had been diverting the company's
funds to his individual use.  It is plain that he did not
rely, when he became a stockholder or creditor, upon
any right as a part of the assets of the company to
recover from the bank the amount of checks which it
had paid and the proceeds of which went to Sander's
individual obligations.  It is only those creditors who
can fairly be said to have relied upon, or whom the law
presumes to have relied upon, a particular asset of the
corporation in whose favor equity will impress a trust.
In *Adamant Manufacturing Co. v. Wallace*, 16 Wash.
614, 48 Pac. 415, it was said:

"But there is another phase of this case which will
compel the affirmance of the judgment, although it was
not the ground upon which the court below acted.
While the doctrine of trust fund is accepted in its
broadest sense, it is well settled that a trust will not
be impressed upon the stock of the corporation in the
hands of the stockholders for the benefit of creditors
who dealt with the corporation with knowledge of the
fact that the stock had been paid for in property the
value of which was less than the face value of the stock.
As was well said in *First National Bank v. Gustin, etc.,
Mining Co.*, 42 Minn. 327, 44 N. W. 198:

" 'The whole doctrine that the capital stock of cor-
porations is a trust fund for the payment of creditors
rests upon the equitable consideration that the distribu-
tion of the capital among stockholders without making
adequate provision for the payment of debts, or the
issue of fictitiously paid up stock, is a fraud upon

creditors who contract with the corporation in reliance upon its capital remaining intact, or in reliance upon the professed capital having been in fact paid up in full. But when the reason for the rule does not exist the rule itself ceases to apply . . . It is only those creditors who can fairly allege that they have relied, or whom the law presumes to have relied, upon the amount of capital stock of the company, who have a right to make such inquiry, or in whose favor equity will impress a trust upon the subscription to the stock, and set aside a fictitious arrangement for its payment.'

"In cases where parties have actual notice of the conditions existing in the corporation, it must be conceded that as to them no fraud, actual or constructive, has been committed by the shareholders and the corporation in receiving property at fictitious values in exchange for the stock of the corporation."

In *Davies v. Ball,* 64 Wash. 292, 116 Pac. 833, relying on the case just cited, it was said:

"There is another matter of defense which may be available to all of these respondents. They should be permitted to show, if they can, that the creditors in whose behalf this action was brought, or any of them, dealt with the corporation with knowledge of the fact that the stock was issued for property of less value than the par value of the stock. Any such creditor will be estopped to participate in the trust fund created by an enforcement of the liability of the stockholders."

It is difficult to see how any of the present creditors, either in fact or by presumption of law, can be said to have relied upon, as an asset of the company when they extended credit, any liability that the respondent may have incurred when it honored checks drawn by Sander upon the corporation's funds to pay his individual debts. All of the creditors which existed at the time of the reorganization have been paid. After the reorganization, the corporation became a solvent going concern under an entirely different management. Its capital stock was reduced and the then creditors had

agreed, with the exception of those having claims of less than one hundred dollars, to take fifty cents on the dollar. The respondent was one of these creditors in a large amount.

[3] One other question remains and that is, whether the depositary bank violated the instructions of the company in paying the checks in issue. There was on file with the bank a resolution of the board of trustees of the company, as follows:

"It was moved by Mr. V. W. Sander and seconded by Mr. F. T. Kenyon, that the president, Mr. W. E. Sander, or the secretary, Mr. V. W. Sander, be authorized to sign checks on behalf of the Company."

This resolution authorizes Sander, the president, "to sign checks on behalf of the company". The checks paid by the bank were so signed. The resolution does not purport to give any instruction as to the disposition of the proceeds of the checks. In this respect, the case differs from that of *Rensselaer Valve Co. v. National Bank of Commerce*, 129 Wash. 253, 224 Pac. 673. In that case the bank permitted the funds to be diverted in violation of express written instructions.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, FULLERTON, ASKREN, PARKER, BRIDGES, and MACKINTOSH, JJ., concur.