[No. 2878.   Decided October 10, 1898.]

PHOENIX MINING AND MILLING COMPANY, *Respondent,*
v. J. H. SCOTT *et al., Appellants.*

MINING CLAIMS — COMMUNITY PROPERTY — JUDGMENT LIENS.

The possessory right which the locator of a mining claim
has under Rev. St. U. S., § 2322, is not community property.

The possessory right which the locator of a mining claim
has under Rev. St. U. S., § 2322, is not such an interest as will
support the lien of a general judgment within the meaning of
Bal. Code, § 5132, making such judgment a lien upon "the real
estate of any judgment debtor."

Appeal from Superior Court, Kittitas County.—Hon.
JOHN B. DAVIDSON, Judge.   Affirmed.

*E. Pruyn,* for appellants.

*Wager & Cameron,* for respondent.

The opinion of the court was delivered by

GORDON, J.—This cause was tried and submitted to the
superior court of Kittitas county upon an agreed state-
ment of facts, and from a judgment in plaintiff's favor the
defendants appealed.   It appears from the agreed state-
ment that appellant is sheriff in Kittitas county, and that
in November, 1894, appellant Scott recovered a judgment
in the superior court against John A. Shoudy, in an action
upon a promissory note executed by said Shoudy as surety
for one Graff.   It is further stipulated that "said judg-
ment is not a legal claim or demand against the com-
munity property or estate of said John A. Shoudy and his
wife, M. E. Shoudy, and never has been."   On the 7th
of August, 1895, the appellant Scott had execution issue,
and placed the same in the hands of the sheriff, who on
the same day levied upon certain mining claims in Kit-

titas county, located by the said John A. Shoudy under the mining laws of the United States and of the state of Washington, for which no patent had been issued, or any application for patent made. At the time of the entry of said judgment against Shoudy, and at the time of the execution of the note upon which said judgment was entered, and at the time of making said mining locations, said John A. Shoudy and M. E. Shoudy were husband and wife, living together as such in the state of Washington. On the 3d of August, 1895, Shoudy and wife, by their joint deed, for a valuable consideration quitclaimed and conveyed to the respondent's immediate grantors all of said mining claims and locations. Said conveyance was filed for record in the auditor's office on the 7th day of August, 1895, but subsequent to the notice of levy of the execution hereinbefore referred to. This action was brought for the purpose of restraining the sheriff from selling said mining claims and locations to satisfy the judgment against Shoudy, and also to remove the cloud upon the plaintiff's title caused by the judgment and levy. Respondent contends that a locator's interest in an unpatented mining claim is not such an interest in real estate as will support a judgment lien; and, further, that if the possessory right which the locator has in such mining property is to be regarded as property subject to a sale on execution, then it is community property under our law, and as such cannot be subjected to the lien of a judgment against the husband alone. Appellants contend that the locator's possessory right is an interest in land, and such an interest as will support the lien of a judgment, and is and may be the subject of sale, mortgage and lease; but they contend further that the wife has no interest in it until a patent has been issued; and these are the questions which the record presents for decision.

4—20 WASH.

In *Forbes v. Gracey,* 94 U. S. 762, it is said:

" Such right as the mining laws allow and as congress concedes to develop and work the mines, is property in the miner, and property of great value.   .   .   .   Those claims are the subject of bargain and sale, and constitute very largely the wealth of the Pacific coast states.   They are property in the fullest sense of the word, and their ownership, transfer, and use are governed by a well-defined code or codes of law, and are recognized by the states and the federal government.   *This claim may be sold, transferred, mortgaged and inherited without infringing the title of the United States.*"

In *Belk v. Meagher,* 104 U. S. 279, the court says:

" Congress has seen fit to make the possession of that part of the public lands which is valuable for minerals separable from the fee, and to provide for the existence of an exclusive right to the possession, while the paramount title to the land remains in the United States."

In Freeman on Executions (Vol. 1, § 175), it is said:

" The mere possession, without title, is, no doubt, one of the least valuable interests or estates which can be held in land.   It is, nevertheless, *a legal estate,*   .   .   .   It is *prima facie* evidence of title.   *It is subject to execution;* and its sale, under process against the possessor, gives the purchaser all the rights accruing from the possession of the defendant, together with the right to enter and enjoy the possession to the same extent as it could have been lawfully enjoyed by the defendant in execution if no sale had been made."

See, also, to the same effect, *McKeon v. Bisbee,* 9 Cal. 137 (70 Am. Dec. 642) ; *Merced Mining Co. v. Fremont,* 7 Cal. 317 (68 Am. Dec. 262) ; *Manuel v. Wulff,* 152 U. S. 505 (14 Sup. Ct. 651).

In Freeman on Executions (Vol. 1, § 175), the author says:

" Mere possessory interests on public lands may, in

most of the states, be sold under execution, except where their sale would interfere with the laws of the United States with regard to the disposition of those lands."

But while this possessory right to a mining claim is property which may be sold on execution, and may be the subject of sale, mortgage and lease, it is nevertheless the sole property of the locator, his heirs and assigns (§ 2322, Rev. Stat. U. S.), and is not, therefore, community property. It will not be doubted that it was lawful for congress to vest the right in whom it might select, and its character, as regards the question of whether it is community property or the separate property of the locator, is fixed by the act which created the right.

In *Black v. Elkhorn Mining Co.,* 163 U. S. 445 (16 Sup. Ct. 1101), decided in 1895, the court says:

" By the terms of the statute there is no grant of any right to the wife. It is granted to the locator and to his heirs and assigns, *and there is no condition that hampers the right to convey* by incumbering it with an inchoate right of dower."

In that and in various other cases the federal supreme court has held that this easement, estate, interest or whatever it may be called, which the locator has in a mining claim may be conveyed by himself alone, without his wife becoming a party thereto; that such conveyance passes his full title and interest; that

" The statute, by expressly providing that the locator and his heirs and assigns should have the rights, clearly meant to provide for a conveyance thereof to the grantee to the same extent that they were possessed by the grantor." *Black v. Elkhorn Mining Co., supra.*

These questions have been settled by the federal courts, and their decisions are binding upon us. In *Jacobson v. Bunker Hill Mining Co.,* 2 Idaho 863 (28 Pac. 396), decided in 1891, the supreme court of Idaho concluded that

property in a mining claim was community property, but that conclusion was reached prior to the decision by the supreme court of the United States in *Black v. Elkhorn Mining Co., supra.* The right of the locator to convey without his wife joining with him being established by the federal decisions, it must be held that § 4491, Bal. Code (1. Hill's Code, § 1400), which requires both husband and wife to join in the conveyance of community real estate, has no application to property of the character we are here considering.

It remains to be considered whether the possessory right which the locator in a mining claim has is such an interest as will support the lien of a general judgment.

"At common law a judgment lien did not attach to a mere equity, though the equity was accompanied by possession. This rule of the common law prevails in several of the United States, and *is generally applied, in the absence of any statute undoubtedly creating a different rule."* Freeman, Judgments (4th ed.), § 348.

See, also, *Smith v. Ingles,* 2 Ore. 43; *Bloomfield v. Humason,* 11 Ore. 229 (4 Pac. 332); *Nessler v. Neher,* 18 Neb. 649 (26 N. W. 471); *Terrell v. Prestel,* 68 Ind. 86; *Baird v. Kirtland,* 8 Ohio, 21; *Harrington v. Sharp,* 1 G. Greene, 131 (48 Am. Dec. 365); *Merry v. Hallet,* 2 Cow. 497; *Modisett v. Johnson,* 2 Blackf. 431.

And while the tendency of American statutes upon the subject is to make judgments a charge upon whatever estate the debtor may have, without regard to whether his title is legal or equitable (12 Am. & Eng. Enc. Law, p. 107), it is firmly settled by the authorities above cited that, in the absence of such a statute, no lien or charge is created against an equitable interest or estate by the docketing of a general judgment. Our statute, § 5132, Bal. Code, makes the judgment a lien upon "the real estate of any judgment debtor." In construing a similar statute,

the supreme court of Iowa, in *Harrington v. Sharp, supra,* says:

" By the language, 'real estate of the person,' we understand that the fee simple, or estate of inheritance, must be in the person, in order to have the judgment against him operate as a lien upon the land."

And under the authorities such a statute does not make the judgment a lien upon the equitable estate of the judgment debtor. Neither at common law nor under our statute is such an interest affected by the docketing of a general judgment.

Affirmed.

SCOTT, C. J., and ANDERS, REAVIS and DUNBAR, JJ., concur.