STRAUB v. CAPPS.

Opinion delivered December 17, 1928.

*J. H. Black* and *W. G. Riddick,* for appellant.

*Elmer Owens,* for appellee

HUMPHREYS, J.   Appellee brought this suit against appellant in the chancery court of Marion County, to quiet his title to an eight-tenths undivided interest in the southeast quarter of the southeast quarter of the northwest quarter of section 10, township 17 north, range 15 west, in said county.   It was alleged in the complaint that appellee was the owner thereof, and that, through mistake, the land was included in a deed executed by George W. Chase and wife to appellant on April 3, 1920, and filed for record on May 2, 1921, and that appellee only recently discovered the execution of the Chase deed.   It was also alleged in the complaint that the Chases had no title to the land whatever at the time the deed was made, and that appellant acquired no title under the deed from them.

Appellant filed an answer, denying that appellee owned the land, or that it was included in the Chase deed through mistake.   Appellant interposed the further defenses that he and his grantors had paid the taxes thereon for more than seven years under color of title, and that he purchased the land at public sale ordered in a partition suit in said court, wherein J. W. McDaniel was plaintiff and Arthur J. Miller, Lizzie Capps and A. B. Capps were defendants, and obtained a commissioner's deed therefor, purporting to convey the entire title thereto; that the decree was rendered on April 28, 1925, and contained a recital that each of the parties to the suit owned an undivided three-fifteenths interest therein.

The cause was submitted upon the pleadings and testimony adduced by the respective parties, which resulted in the following findings and decree of the court:

The court found that George W. Chase had no interest in the land when he included it in the deed he made to appellant; that Straub had paid taxes on the land for the years 1922 to 1927 inclusive, amounting to $126.12; that, at the time of the partition suit in 1925, appellee actually owned an eight-tenths interest in the land, but was not made a party to the suit; and, pursuant to this finding, the court set aside the decree in the partition suit, canceled the commissioner's deed, quieted appellee's title to an eight-tenths interest in said tract of land as against appellant, and adjudged that appellee pay appellant $126.12 to cover the amount of taxes paid by him, together with interest on each tax payment from the date he paid same; from which findings and decree an appeal has been duly prosecuted to this court.

By agreement the parties filed an abstract of the title to the real estate in question as a part of the evidence in the case. Although contained in appellant's abstract of the testimony, it is too long to incorporate in this opinion. It is not necessary that it should be, in order to determine the question involved on this appeal. According to the abstract, Chase acquired an undivided one-fifth interest in the land on February 13, 1917, and retained it until January 17, 1924, at which time he conveyed it to Bell Reid. The abstract reveals that on June 25, 1921, A. B. Capps conveyed his interest in the land to Frank Capps, and that at that time a four-fifths undivided interest was owned by Frank Capps, Lizzie Capps and Arthur J. Miller, and the other one-fifth interest by J. W. McDaniel. The quitclaim deed from A. B. Capps to Frank Capps was not acknowledged in accordance with the law relating to acknowledgments in Arkansas. The acknowledgment failed to contain the word "consideration." The abstract reveals that the Capps family acquired a three-tenths interest in the land on April 5 and October 16, 1899, and subsequently other interests, until they owned between them a four-fifths interest therein, either in their own names or in the names of others for them, down to and including the year 1921. The abstract

does not disclose what became of the lands after that time.

The record reflects that from 1917 to 1927, inclusive, the land was assessed for taxes to Bell Reid *et al.*, and that the taxes for 1917 and 1918 were paid by them; that they were paid by J. W. McDaniel *et al.* for 1919; by C. B. Capps for 1920; by Morning Star Mining Company for 1921; and by Theo Straub for all the years thereafter.

The record also shows that on May 1, 1916, George W. Chase leased the land from Frank L. Wilder, A. B. Capps and Mrs. Bell Reid. This lease recites that Frank L. Wilder owned two-fifths interest, A. B. Capps owned two-fifths, and Mrs. Bell Reid owned one-fifth interest. The lease was for three years, and, according to its terms, expired on May 1, 1919. The lease required Chase to operate the mine and pay certain royalties to the lessors. It was provided in the lease that, any time during the life thereof, Chase might purchase the land for $12,000, and that, in the event he exercised the option to buy same, he should receive a credit on the purchase price for the amount of royalties paid by him under the lease.

Arthur J. Miller testified that in 1916 and 1917 he held a power of attorney from Lizzie and A. B. Capps to collect the royalties from Chase, and that from March, 1916, to February 10, 1917, he collected approximately $3,500 gross in royalties; that at the time Frank L. Wilder was acting as attorney for Frank Capps, and was holding a title in his own name to the land for Frank Capps, Lizzie Capps and A. B. Capps; that at the time Lizzie and A. B. Capps claimed to own an eight-tenths interest, and that George W. Chase did not claim to own any part of the land.

Quitclaim deeds were introduced from Arthur J. Miller and wife to appellee, dated March 17, 1928, and from Lizzie Capps to appellee, dated March 14, 1928.

Appellee testified that he acquired an eight-tenths interest in the land on June 25, 1921, by quitclaim deeds from A. B. Capps, Lizzie Capps and Arthur J. Miller; that the deed from A. B. Capps was filed for record in 1921, but the deeds from Lizzie Capps and Arthur Miller

were not filed for record, but were lost; that deeds from them had been recently obtained and filed for record in place of the ones that were lost.

The abstract also shows that George W. Chase, by quitclaim deed dated April 3, 1920, conveyed the land to the appellant, Theo Straub.

According to the testimony of a number of witnesses, Chase opened a mine upon the land, and operated same for about twenty years, claiming to be the owner thereof prior to the date on which he conveyed it to Straub; the land adjoined the Morning Star Mining Company's land, upon which Chase resided. Chase never lived upon the land in question, and it was never fenced. After Chase executed the deed to Straub, he procured a watchman to visit the mine occasionally and see that the machinery and tools used by Chase were not moved away, but he did not operate the mine. After obtaining his deed, Straub paid the taxes for six years before this suit was instituted, amounting to $126.12.

The record reflects that in the year 1925 J. W. McDaniel brought a suit in partition against Arthur J. Miller, Lizzie Capps and A. B. Capps, and obtained an order for the sale of the property; that the decree of partition contained a recital that each of the parties owned an undivided three-fifteenths interest in the land; that at the sale Theo Straub, the appellant herein, purchased the land for the sum of $400, and that, pursuant to the purchase, he received a commissioner's deed thereto, which was approved by the court; that McDaniel accepted his *pro rata* share of the $400, and that the remainder is in the hands of the clerk, amounting to $251.14. Appellee was not made a party to the suit.

Appellant's first contention for a reversal of the decree is that appellee had no title to the land on June 25, 1921, nor acquired any title after that time. It is argued that, although A. B. Capps conveyed appellee an undivided four-fifteenths interest therein on that date,

and that, although the deed was placed of record, it did not constitute notice to the public, because it was not entitled to record, on account of being defectively acknowledged, in that the word "consideration" did not appear in the acknowledgment. It is true that the deed, not being entitled to record, would not protect appellee against a subsequent transfer of the property by A. B. Capps, but it was good as between him and appellee, and passed the title to him. Appellee testified that on the same date Arthur J. Miller and Lizzie Capps conveyed their interest in the land to him, but that the deeds were lost without being placed of record, but that recently he had obtained deeds from them in lieu of the lost deeds, and placed them of record. Although the original deeds from Arthur J. Miller and Lizzie Capps to appellee were lost, the title passed under the deeds to appellee. Appellant argues that, because the A. B. Capps deed was not entitled to record and that the original deeds of Arthur J. Miller and Lizzie Capps were not recorded, such title as appellee acquired in them could not prevail over the title he acquired at the sale in the partition suit, in which A. B. Capps, Lizzie Capps and Arthur J. Miller were defendants. In other words, that, on account of appellee's failure to record his deeds, he placed it in the power of A. B. Capps, Lizzie Capps and Arthur J. Miller to partition the lands and sell them to parties who had no actual or constructive notice of his title. We do not think appellant is correct in this contention. The only title he obtained at the judicial sale was such title as J. W. McDaniel, Arthur J. Miller, A. B. Capps and Lizzie Capps had. Appellant was in no sense an innocent purchaser for value. He bought it at a judicial sale, and courts do not warrant titles. Appellee was not made a party to the partition proceeding, and was not bound by it. As far as the record reflects, appellee's grantors, Arthur J. Miller, Lizzie Capps and A. B. Capps, may not have appeared in the partition suit. The suit was instituted by J. W. McDaniel against them. It may be that the reason they did not appear was that they had conveyed the lands to

appellee, and had no interest therein. They have never claimed the proceeds from the sale. The consideration Straub paid for the land at the judicial sale is still in the hands of the clerk. McDaniel is the only one in the partition suit who accepted any part of the consideration paid by Straub. We do not think that one's title to real estate can be affected by a partition proceeding and sale thereunder to which he was not a party and of which he had no knowledge, whether his title papers be entitled to record or recorded. According to the undisputed evidence, appellee owned an eight-tenths undivided interest in the land at the time same was sold in the partition suit, and his title was not affected thereby, because he was not made a party thereto and had no knowledge of the pendency thereof.

Appellant also contends for a reversal of the decree on the ground that the Chase deed to him constituted color of title, and that he and his grantors had paid the taxes continuously upon the land for more than seven years. Chase had no actual interest in the land, as far as the record discloses, save and except as a holdover lessee at the time he made the deed to Straub. He therefore conveyed no title to Straub. Treating the conveyance, however, as color of title, Straub only paid the taxes for six years before the institution of the suit. His immediate grantor in the conveyance did not pay the taxes in 1921. According to the testimony, the taxes were paid by the Morning Star Mining Company in 1921, by A. B. Capps in the year 1920, and by J. W. McDaniel in 1919. It would have been necessary for George W. Chase to have paid the taxes in 1921 in order for Straub to bring himself within the statute authorizing one who has paid taxes continuously upon wild land under color of title for seven years to have his title quieted. We do not think that the proof is sufficient to show that Straub and his grantors acquired title to the land by seven years' adverse possession. The most that it showed was that Straub engaged a watchman to go upon the property occasionally and ascertain whether any of the mining ma-

chinery which had been used by Chase had been disturbed or removed. This act did not constitute the character of possession necessary to acquire title by adverse holding.

No error appearing, the decree is affirmed.