## HIDALGO COUNTY WATER CONTROL & IMPROVEMENT·DIST. No. 1 v. QUICK. (No. 8075.)

Court of Civil Appeals of Texas. San Antonio. Dec. 22, 1928.

Rehearing Denied Jan. 23, 1929.

Don A. Bliss, of San Antonio, and Neal A. Brown, of Edinburg, for plaintiff in error.

Cameron & Epperson and J. F. Carl, all of Edinburg, for defendant in error.

SMITH, J. This cause, like that of Hidalgo County Water Control & Improvement District No. 1 v. Gannaway, this day decided, 13 S. W. (2d) 204, concerns somewhat the status, duties, liabilities, and exemptions, if any, of water improvement and control districts, provided for in section 59, art. 16, of the state Constitution, and chapter 2, title 128, R. S. 1925. The facts in the two cases differ widely in some aspects, however.

In this case appellee alleges that appellant's manager contracted in behalf of the district to irrigate appellee's cotton crop at a particular time in the future, on a specific day. The water was never furnished for that crop, which failed as a consequence, and judgment was rendered in favor of appellee for damages measured by the value of appellee's crops had they reached normal maturity, less the expense of cultivation, ir-

rigation, harvesting, and marketing. The district has appealed.

The irrigation system of appellant district was formerly owned and operated by a private irrigation corporation, and was taken over by appellant in the summer of 1923, at which time it was so out of repair and inadequate as to be useless, requiring complete rehabilitation before its operation could be resumed. To procure funds with which to rehabilitate the system, it was necessary for the district to issue bonds, which were voted by the electorate of the district in the sum of $1,500,000. On account of the condition of the bond market, the district was unable to sell any of its bonds until it disposed of some of them in December, 1923, when it paid the purchase price of the system, and set about the task of rebuilding.

The lands within the district embraced two large tracts, the first of which was nearest the source of the water supply of the district, and the second, or Edinburg tract, was furthest from that source of supply. Appellee's lands were embraced in the latter tract. Water for irrigation purposes was hoisted by two successive lifts, and was conducted to the Edinburg tract by the necessary aid of two large siphons. These siphons were decayed and useless when the district took over the system, rendering it necessary to replace them with serviceable siphons before any lands in the Edinburg tract could be irrigated by appellant.

We quote from appellee's statement of his case:

"A sufficient statement, for the purpose of this brief, is, that during the month of November, 1923, the Plaintiff talked with the officers of the Defendant district with reference to the matter of renting 80 acres of land described in the pleadings, for the purpose of making a crop thereon during the year 1924, and he told Mr. Ledbetter, who was the General Manager, as well as director of the Defendant district, that he did not wish to go to the expense of paying the flat rate for water, cleaning out ditches and fixing laterals, cleaning and plowing and otherwise preparing the land unless he could be assured that he would get water to make said crop of cotton by irrigation. He was told to go ahead, that Defendant would have the water ready when Plaintiff was ready for it; that they (district) would get him the water; and that relying on said promise and assurance, Plaintiff went to work cleaning, clearing and plowing said land; fixed the ditches and laterals; that the land was placed in first class condition; that the Plaintiff paid the flat rate for water on said land amounting to $340.00; rebuilt and cleaned the laterals at a cost of $70.00; cleaned and cleared the land at a cost of $247.50; and that all this was done relying on the promise of the Defendant, its officers, manager and agents, that ample water would be furnished to make a crop of cotton on said land; that the water would be ready by the time Plaintiff was ready to use same for the irrigating of his land for planting.

"After his land was prepared in a good farmer-like manner for planting, about the second or third week in March, 1924, Plaintiff planted forty acres of the land shallow, so that it might be irrigated and caused to come up, as was customary, and on April 8th, 1924, Plaintiff made formal written application for water to irrigate said forty acres of land (described as Lot 10) and paid the usual required charge therefor in the sum of $120.00 and was told that water would be furnished on April 10th, 1924. It was not furnished then and never was furnished. Plaintiff did not make formal application for the water to irrigate the other forty acres (described as Lot 9) because he was told that the district could not get the water; but he planted the other forty acres, or a part thereof, but it did not rain and the same would not come up. It did rain about the 20th of May 1924, but the cotton only came up scatteringly, the rain being light, and made no crop although well cultivated.

"If the water had been furnished when needed as agreed, the cotton would have come up and grown off early and would have made better than half bale of cotton per acre, before the weevils hit it; that cotton planted later would not mature sufficiently to escape the ravages of the boll weevil, which usually hit this county in the month of June, usually about June 15th."

It is undisputed that as soon as it could procure the necessary funds from the proceeds of the sale of its bonds appellant proceeded diligently towards getting its system in condition to perform the duties for which it was created and organized. By about the 1st of April in the year in question it completed this task by replacing the old wooden siphons with new metal siphons, but, when the water was turned into them, one of them, through latent and concealed defects in material or construction, burst, and was rendered useless. As a consequence, it was impossible to get water to appellee's land, or any other land in the Edinburg tract, for that crop season. It was for this reason that appellant failed to supply water for appellee's crops.

For the reasons set out at length in the Gannaway Case, this day decided and hereinabove referred to, we hold that the district was not bound by the individual statements and promises made by its manager and one of its directors that the district would irrigate appellee's lands at a particular time in the future. This lack of authority on the part of appellant's officials is emphasized in this case by the fact that at the time the statements and promises were made

the district had not begun to function with reference to appellee's lands, or any lands in that vicinity. The district's system had not been completed, its facilities for the distribution of water had not been constructed to reach appellee's or his neighbors' lands, and the relation of distributor and consumer had not yet arisen between appellant and appellee.

The district owed appellee no duty until its system and facilities had been constructed, or at least until, by the use of ordinary care, it could and should have extended its completed facilities to appellee's land and had sufficient water in its canals to supply appellee's legal demands in accordance with the statutes and with reasonable rules and regulations promulgated by its board of directors governing the distribution of waters at its command, and consistent with its obligations to others entitled to equal rights and privileges with appellee. Whether or not appellant met this obligation to perform this duty is a question of fact to be determined by the trial court or jury.

Both the statute (article 7751) and the rules and regulations adopted and promulgated by the district provided that, in order to entitle him to demand water for the irrigation of his lands, the consumer must file a written application or statement with the proper district official, describing the land he desires to be irrigated, the number of acres thereof, and the character of the crops he expects to plant therein, and other prescribed data necessary to put the district upon formal, written notice of his demands. Until he files this application and deposits the amount of the charge for the desired service with the proper district official, the district is under no obligation to furnish water to him. Therefore appellee's right to demand water of the district for his lot 10 was controlled by conditions existing at the time he filed such application and deposited the charge required to accompany the application, without reference to prior oral statements or promises of individual officials of the district. By the same token appellee was never in a position to demand water for his lot 9, since he made no effort to comply with the requirement that he file written application covering that tract, and made no deposit to cover the charge for service to that lot.

We conclude that the court erred in holding appellant liable as upon a contract based upon the oral promises and statements made by the district manager and director prior to the time appellee filed his written application and deposited the requisite charge for the service demanded. We further conclude, for the reasons stated, that appellee cannot recover from the district for its failure to irrigate appellee's lot 9, for which no written application was made, nor water

charge deposited. We are of the opinion that appellant's liability, if any, as to lot 10, should be measured by the degree of care appellant exercised to extend its system so as to supply the water demanded by appellee within a reasonable time after appellee filed his written application and paid the prescribed charge therefor. In accordance with these conclusions, the judgment must be reversed, and the cause will be remanded for a new trial upon the theory indicated in this opinion.

Reversed and remanded.