[No. 27827. Department Two. April 23, 1940.]

JAMES BARBER WOODWORTH, *Respondent*, v. EDWARD J. EDWARDS *et al., Individually and as Trustee, Appellants*, WASHINGTON GOLD MINES CORPORATION *et al., Defendants.*[1]

[1]Reported in 101 P. (2d) 591.

*S. H. Kelleran* and *William A. Herren*, for appellants.

*E. K. Brown* and *LeRoy McCann*, for respondent.

BEALS, J.—Prior to January, 1931, Washington Gold Mines Corporation, a corporation organized and existing under the laws of this state, owned, under notices of location, possessory rights to mining claims on land owned by the Federal government in Chelan county. Apparently, the corporation's rights in the mining properties were good as against everyone save the United States government.

January 8, 1931, the corporation mortgaged the unpatented mining claims and millsites, together with water rights appurtenant thereto, and the machinery and equipment located on the property, to one John Sayre. The mortgage was executed both as a real estate mortgage and a mortgage of chattels, and was recorded as the former, and timely filed as the latter, in the office of the auditor of Chelan county.

November 2, 1931, J. D. McVane brought suit against the corporation, in the superior court for Chelan county, seeking judgment upon an alleged claim for wages, at the same time causing a writ of attachment to issue, directing the sheriff to levy upon the property of the corporation in an amount sufficient to satisfy the plaintiff's claim. Pursuant to the writ of attachment,

the sheriff executed the writ, his return later filed showing that he had attached land belonging to the corporation, consisting of the unpatented mining claims and millsites above referred to.

December 29, 1931, the corporation mortgaged the mining properties to G. E. Tilton. This mortgage was executed both as a real estate mortgage and as a chattel mortgage, and was filed for record as a real estate mortgage in the office of the auditor of Chelan county. It was never filed or indexed as a chattel mortgage.

The suit brought by McVane proceeded to trial, and March 19, 1932, a judgment was entered in McVane's favor and against the corporation, for the sum of $2,200 and costs. The judgment referred to the attachment levied in the action, November 2, 1931, the judgment reciting that the plaintiff thereby "acquired and ever since has owned and held a valid and subsisting lien against" the mining properties belonging to the corporation. July 6, 1932, McVane procured in the action an order of sale as of personal property, and pursuant thereto the sheriff levied upon the unpatented mining properties, placed a keeper in charge thereof, and advertised the claims for sale as personal property, to be sold July 19, 1932.

July 18, 1932, John Sayre, the mortgagee under the mortgage hereinabove referred to, brought suit against the corporation, together with McVane and the sheriff, seeking in a first cause of action a decree foreclosing his mortgage, and in a second cause of action, a decree foreclosing an alleged labor lien asserted by one R. H. McDaniel, in the sum of seven thousand dollars, which had been assigned to the plaintiff Sayre.

July 19th, the sheriff proceeded to sell the mining properties, pursuant to the order of sale in the McVane case, Mr. McVane, the judgment creditor, purchasing the same on a bid in the amount of his judgment. This

sale was conducted as a sale of personal property, and the sheriff delivered McVane a bill of sale pursuant thereto.

July 29, 1932, McVane conveyed the mining properties to LeRoy McCann, who in turn conveyed the properties, part in 1934 and the remainder in 1936, to G. M. Watson, who, May 29, 1936, conveyed the properties to J. B. Woodworth, plaintiff in this action.

Meanwhile, the venue of the suit brought by Sayre against the corporation and McVane had been changed to King county. No further proceedings were had in this action until October 30, 1933, when a stipulation was entered into by the parties concerned, by the terms of which it was agreed that there was due to Sayre from the corporation on the first cause of action $1,794, less a payment of five hundred dollars which Sayre acknowledged. The balance of this amount was to be paid on or before February 1, 1934. It was also stipulated that there was due on the second cause of action, for the foreclosure of the McDaniel lien, the sum of eight hundred dollars, and that, if the balance due on the first cause of action was paid on the agreed date, February 1, 1934, the payment of the eight hundred dollars in liquidation of the second cause of action could be made on or prior to July 1, 1934. By the terms of the stipulation, it was stated that the corporation did not propose to make the payments called for thereby, and that the payments were to be made by one Edward J. Edwards.

Some proceedings were had thereafter, which need not be particularly described, it being sufficient to state that Edwards eventually paid all sums due Sayre, according to the terms of the stipulation. Before these sums were paid, Sayre assigned to one Kinney all his rights under the two causes of action mentioned in his complaint, whereupon the corporation and Edwards

sued Sayre, Kinney, and McDaniel. Our only concern with this action is that, by a writing dated May 1, 1935, Kinney assigned to Edwards the Sayre mortgage and the cause of action theretofore brought to foreclose the same, and that in the judgment therein rendered it was decreed

" . . . that any and all rights of the said John Sayre and of the defendants G. B. Kinney and R. H. McDaniell under the said stipulation of October 30th, 1933, be and the same are hereby assigned, transferred and vested in the plaintiff Edward J. Edwards, the plaintiffs having fully performed said stipulation."

Apparently, no further proceedings have been had in the suit brought by Sayre, which is still pending before the superior court for King county.

Several years later (his amended complaint having been filed November 2, 1938), the plaintiff herein, James B. Woodworth, claiming under the bill of sale from the sheriff to McVane, instituted this action for the purpose of obtaining a decree quieting his title to the mining properties as against Edwards, Tilton, and several other named defendants.

The corporation was stricken from the rolls in the office of the secretary of state during 1933 for nonpayment of license fees, and was dissolved in 1936, pursuant to Rem. Rev. Stat., §§ 3842, 3843 and 3846 [P. C. §§ 4647, 4652, 4655]. By § 3843, it was provided that, after a corporation had been stricken for nonpayment of license fees, it might apply for reinstatement at any time within three years, § 3846 providing that, if no such application be made, the secretary of state should note upon his records the dissolution of the corporation. By the uniform corporation act of 1937 (Laws of 1937, chapter 70, p. 246, § 14; Rem. Rev. Stat. (Sup.), § 3836-14 [P. C. § 4656-64]), it is provided that

". . . any corporation which may have been heretofore stricken or dissolved or which may hereafter be dissolved . . . is hereby given the privilege of becoming reinstated and having its corporate license restored by applying to the secretary of state for such reinstatement at any time within ten (10) years after such corporation may have been or may be stricken or dissolved. . . ."

Messrs. Edwards and Tilton filed a joint answer to the amended complaint, denying plaintiff's ownership of the property, and pleading affirmatively the existence of the corporation, the execution of the mortgage to Tilton, the sale to McVane, the alleged invalidity of this sale, and the validity and nonpayment of the Tilton mortgage. For a second affirmative defense, defendants pleaded the execution of the mortgage to Sayre, the amount due thereon, and that defendant Edwards was the owner thereof. Tilton prayed for a decree, including the foreclosure of his mortgage, and Edwards prayed that his mortgage and rights set forth in the second affirmative defense and counterclaim

". . . be established as a first and paramount lien on the property, and all other rights be held junior and inferior to his rights thereunder, as they may be established in the pending cause recited in said second affirmative defense and cross-complaint."

Replying to these affirmative defenses, plaintiff Woodworth pleaded that the mining properties were personalty; that the Tilton mortgage had never been filed as a chattel mortgage; and that no affidavit that the mortgage was still due and unpaid had been filed within two years after the mortgage became due, as required by Rem. Rev. Stat., § 3782 [P. C. § 9761]. Answering Edwards' cross-complaint, plaintiff alleged that the corporation had been stricken and dissolved in July, 1936, and was not subject to reinstatement; that the trustees of the corporation were not parties

to the Sayre action; and that that action abated upon the dissolution of the corporation, and had never been revived, and was not, at the time of the pleading, subject to revival. Plaintiff also pleaded the statute of limitations and failure of consideration.

Two other defendants pleaded the fact that Edwards had never caused himself to be substituted as party plaintiff in the Sayre action, as successor in interest of Sayre, and that, for this reason, the action had abated. Plaintiff makes some claim that he adopted this allegation.

After a lengthy hearing, the trial court entered a decree quieting plaintiff's title and dismissing the cross-complaints above referred to, together with another filed by certain defendants with which we are not now concerned. From this decree, Messrs. Edwards and Tilton have appealed, assigning error upon the ruling of the trial court to the effect that the interest of the owner of unpatented mining claims is personal property and not real estate, and may be sold on execution pursuant to a judgment for money, as personal property may be sold to satisfy such a judgment.

Appellant Edwards contends that the trial court erred in dismissing his cross-complaint and in holding that he had abandoned the King county mortgage foreclosure action; that that action had abated; and that the statute of limitations had run against appellant's claim. Appellant Tilton contends that the trial court erred in dismissing his cross-complaint; in holding his mortgage to be void, and refusing to foreclose the same. Both appellants assign error upon the entry of the decree quieting respondent's title as against them, and in taxing against them certain items as costs.

Appellants vigorously contend that this court should hold that the estate of the owner of a mining claim held under a location notice, and which is good

against all the world save the United States government, is a freehold, or fee simple estate, although the ultimate fee remains in the government until the issuance of a patent. Appellants cite several well-known texts and some decisions in support of their contention.

In the case of *Phoenix Mining & Milling Co. v. Scott,* 20 Wash. 48, 54 Pac. 777, it appeared that Scott had recovered judgment against one Shoudy, the judgment not being against Mrs. Shoudy. Execution was issued on the judgment, but four days prior to the levy of the execution on certain mining claims standing in Shoudy's name, he and his wife conveyed the property to the predecessor in interest of the plaintiff in the case cited, who sued Scott and the sheriff, seeking an injunction against selling the mining claims pursuant to the execution. This court held that the mining claims were not community property, but were the separate property of the locating spouse, and that the judgment in Scott's favor against Shoudy had not become a lien against the mining claims pursuant to the statute, now Rem. Rev. Stat., § 445 [P. C. § 8110-11], which makes a judgment a lien upon the real estate belonging to the judgment debtor, but further provides that "personal property of the judgment debtor shall be held only from the time it is actually levied upon." It was held that the possessory right of the locator of a mining claim was not such an interest as would support the lien of a general judgment.

In the case of *Huffman v. Ellen Mining Co.,* 118 Wash. 546, 204 Pac. 197, it was held that the interest of the locator in an unpatented mining claim was capable of sale as personal property under execution. In the course of the opinion, this court, referring to the case of *Phoenix Mining & Milling Co. v. Scott, supra,* said:

"In that case we held that the possessory right which a person acquired by the location of a mining claim, under the statutes of the United States, is not such an interest as will support the lien of a general judgment within the meaning of our code making such a judgment a lien upon 'the real estate of the judgment debtor.' If this be the rule, it would seem necessarily to follow that the interest acquired is personal rather than real, and being personal, it could be sold under execution as personal property is so sold."

Appellants seek to lessen the authority of the decision now under discussion, because this court, after stating the proposition above quoted, stated another ground for the conclusion reached, that the judgment should be affirmed. Notwithstanding this fact, the portion of the decision above quoted is not dicta, but is authoritative, as the deliberate approval of the principle laid down in the *Phoenix Mining & Milling Co.* case, and the statement of the only logical result which can follow from that decision.

While some courts have laid down a different rule, and have held that a possessory right under which a mining claim is held pursuant to notice of location is real property, and not personalty, many of these decisions are based upon statutes which require such a holding.

The supreme court of Oregon, in the cases of *Duffey v. Mix*, 24 Ore. 265, 33 Pac. 807, and *Herron v. Eagle Mining Co.*, 37 Ore. 155, 61 Pac. 417, held that the interest of the owner of a mining claim, held under a notice of location, is not real estate or interest in the land.

Appellants rely upon our decision in the case of *State ex rel. Oatey Orchard Co. v. Superior Court*, 154 Wash. 10, 280 Pac. 350, in which it was held that purchasers of orchard land, who took possession under an executory contract, with the right to harvest the crop, had an interest subject to attachment, under Rem. Comp.

Stat., § 659 (Rem. Rev. Stat., § 659 [P. C. § 7391]), authorizing attachments upon real property.

Questions involving the title and right of possession to unpatented mining claims have always been difficult of solution. Under Federal and state statutes, mining claims are unlike any other property. Many years ago, this court, by the two decisions first above cited, established a rule concerning mining claims, and we are of the opinion that these cases laid down a rule of property and should be followed. We accordingly hold that the sheriff, when he received the execution sued out by McVane upon his judgment against the corporation, properly levied upon the corporation's interest in the mining claims as personal property; that the sheriff's sale pursuant to this levy vested title to the mining claims in McVane, subject to existing rights; and that the respondent in this action has succeeded to McVane's rights in the mining claims.

■ Respondent argues that the Sayre mortgage foreclosure action abated upon the dissolution of the corporation, the plaintiff having failed to substitute its trustees as parties defendant within one year thereafter. In the recent case of *National Grocery Co. v. Kotzebue Fur & Trading Co., ante* p. 288, 100 P. (2d) 408, this court, in line with several of our former decisions referred to in the opinion, held that, as under the act of 1937, hereinabove referred to, a corporation was accorded the privilege of becoming reinstated within ten years, a dissolved corporation could be sued during the period within which it might be reinstated pursuant to the statute. Following the holding in the case cited, it must be held that the corporation with which we are here concerned could be sued, although it had been dissolved upon the records in the office of the secretary of state, and that the Sayre action did not abate.

■ Respondent also contends that the Sayre foreclosure action abated because appellant Edwards failed to cause himself to be substituted as party plaintiff therein. The record clearly shows that, after the institution of the action, Edwards succeeded to the rights of the plaintiff Sayre therein. In the assignment from Kinney to Edwards, above referred to, it is provided that the action may be prosecuted in the name of the assignor or otherwise. The action was commenced by Sayre, the real party in interest, and upon the record before us we find no occasion for holding that Edwards was obligated to cause himself to be substituted as party plaintiff in the action, under penalty of a holding that the action abated if he did not do so. *Nelson v. Northern Pac. R. Co.*, 158 Wash. 52, 290 Pac. 432. Edwards did sign the stipulation above referred to, and to that extent at least made himself a party to the proceeding.

■ Respondent next contends that Edwards abandoned the foreclosure action; and that, the statute of limitations having run against the debt prior to the filing of the cross-complaint in this action, Edwards has lost any rights which he ever had as successor in interest to Sayre. The foreclosure action was commenced July 18, 1932, and, in so far as the record before us discloses, no steps have been taken in the action subsequent to the signing of the stipulation in 1933. In this action, Edwards, in his cross-complaint, merely asked that his mortgage and his rights thereunder be established as a first and paramount lien on the property. He did not ask that his mortgage be foreclosed. It nowhere appears that any motion has ever been made in the foreclosure action for an order dismissing the same for want of prosecution. Neither is there anything in this record which would indicate any intent on the

part of Sayre or Edwards to abandon the foreclosure action, which action must be tried upon its own record.

The fact that, in his cross-complaint in this action, Edwards did not ask for a foreclosure of his mortgage, but merely asked that it be adjudged to enjoy priority over respondent's rights, indicates an intention on Edwards' part not to abandon the foreclosure action. In resisting respondent's complaint, Edwards properly asserted his prior claim, but asked merely that his claim be adjudged to enjoy such seniority. We are convinced that the record herein does not support a holding that appellant Edwards has abandoned the mortgage foreclosure action. This being true, there is presented in this case no question of the statute of limitations.

The judgment rendered by the superior court for Chelan county, in the case of McVane versus the corporation, stands unimpeached. Appellants do attack the proceedings by way of execution and sale, which were instituted after the rendition of that judgment. We hold that such proceedings were regular and in accordance with the law.

We hold that, as to appellant Edwards, respondent should have been denied any relief, and that the trial court should have determined that, from the evidence introduced in this action, appellant Edwards was entitled to an adjudication that his claim, originally, was superior to respondent's rights in the mining claim. No decree in this action should attempt to control the outcome of the pending suit for the foreclosure of the Sayre mortgage.

Respondent's rights as successor in interest to McVane, held under the judgment entered in the action which McVane brought against the corporation and the subsequent proceedings had therein, were superior to the rights of appellant Tilton in and to the

property claimed by respondent, the Tilton mortgage never having been filed as a chattel mortgage. Apparently, Tilton's mortgage covered property not mentioned in the bill of sale from the sheriff to respondent.

The trial court dismissed appellant Tilton's cross-complaint in its entirety, with prejudice, not passing upon Tilton's rights as against the corporation. The decree contains no recitals which are helpful upon this phase of the litigation, and no findings of fact were entered. Appellant Tilton asked for judgment against the corporation and for the foreclosure of his mortgage, and has appealed from the decree dismissing his cross-complaint with prejudice. As we hold that the corporation may still be sued, it would seem that appellant Tilton had the right to sue the corporation, and to foreclose his mortgage against any property covered thereby to which respondent enjoys no superior title.

As the trial court was evidently of the opinion that, as against the corporation, the action had abated as to the foreclosure of the Sayre mortgage, it would follow that, as against the corporation itself, the Tilton mortgage could not be foreclosed. The surviving trustees of the corporation were made parties defendant, and an order of default was entered as against them. Whether the service upon these trustees constituted service upon the corporation, was a question not determined.

The decree appealed from is reversed, and the cause remanded, with instructions to grant appellant Edwards the relief indicated. As to appellant Tilton, the court will determine what, if any, relief this appellant is entitled to as against the corporation, and whether or not this appellant is entitled to judgment against the corporation and a decree foreclosing his mortgage as to any property which may still be subjected to the

lien thereof. In this connection, the court may reopen the case and take further evidence, on application being made for such relief.

Reversed and remanded.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.

[1]Reported in 101 P. (2d) 597.