JONES *v.* BROWN.

4-8054                                             199 S. W. 2d 973

Opinion delivered February 24, 1947.

*Frank S. Quinn,* for appellant.

*Shaver, Stewart & Jones,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal questions a decree holding that certain minerals pertaining to an old right-of-way through 560 acres were not reacquired by the appellants who through adverse possession prevailed as to the severed fee.

During and before 1917 Mrs. J. F. Jones owned the acreage in question, including minerals. She conveyed a 100-ft. strip to Sherve Lumber Co. The following year (1918) Sherve sold to Dorsey Land & Lumber Co., a corporation. In 1925 this grantee conveyed all of its property to Dorsey Corporation, (chartered by Delaware) the transaction by express terms including the strip which forms the subject matter of the controversy here.[1]

In 1932 Dorsey Land & Lumber Company, by its vice-president, undertook to quitclaim to Mrs. Jones the 100-ft. strip. The Dorsey Corporation, presumptively insolvent, was placed in the hands of a receiver—Abel Davis—appointed by an Illinois State Court. This occurred in 1927. The litigation was transferred to a Federal District Court, where the appointment of Abel was confirmed; that is, his status as receiver was recognized by the U. S. Court, where he continued to serve. In 1933

---

[1] Dorsey Land & Lumber Company's authority to do business in Arkansas was revoked April 21, 1931. Dorsey Corporation, according to records in the Secretary of State's office, was authorized to do business in this State October 13, 1925. H. S. Dorsey was named as agent for service. This corporation withdrew from Arkansas March 3, 1927.

the receiver conveyed to R. Brown, acting for himself and H. M. McIver, all of the Dorsey Corporation's property in Miller County, Arkansas. The so-called ancient logroad grant (about ten miles long by 100 feet wide) was minutely described by metes and bounds. McIver later surveyed the strip and caused a plat of it to be made. March 24, 1937, Brown conveyed half of the minerals incident to the strip. By mesne conveyances The Carter Oil Company acquired, *prima facie,* an oil and gas lease covering half of the interest. July 18, 1944, appellants filed their suit, alleging that the conveyance from Dorsey Land & Lumber Co. to Mrs. Jones was color of title. The land was wild and uninclosed, and she or those holding through her had continuously paid taxes on the full 560 acres, irrespective of outstanding mineral claims.

After the suit was begun it was discovered that the Tax Assessor, in extending 1936 assessments, showed the strip to be in Township Seventeen, when the correct description was Township Sixteen. In listing for taxation that part of the strip under which minerals are claimed by appellees (and as to which The Carter Oil Company lease pertains) the area was plotted in such manner that the property in question was designated Lot 17. It is not disputed that in assessing the minerals the trustee's grantees correctly described the property in Township Sixteen. Difficulty arose when the Assessor's records were transcribed.

When Dorsey Land & Lumber Company's vice-president executed the deed to Mrs. Jones in 1932 the attempt was to quitclaim property conveyed to Dorsey Corporation in 1925. But, say appellants, the deed was color of title, and subsequent payment of taxes served to defeat appellees. The issue therefore is, Can one by the payment of taxes on wild and unenclosed land for seven consecutive years acquire by adverse possession the right to undivided interests in minerals under a part of such land when the facts show that on some date between the first and final tax payments (constituting the seven-year period) the minerals had been conveyed to a

third person, it being assumed that the grantor of mineral rights had authority to sell, and that the instrument by which it was sought to effectuate the conveyance was legally sufficient as to form?

Before severance of the mineral estate the owner of real property has title not only to the land surface, but to that beneath and above the surface. *Bodcaw Lbr. Co. v. Goode,* 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578; *Grayson McCleod Lbr. Co.* v. *Duke,* 160 Ark. 76, 254 S. W. 350; *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S. W. 2d 390, 67 A. L. R. 1436; *Huffman* v. *Henderson Co.,* 184 Ark. 278, 42 S. W. 2d 221; 1 Am. Jur. 857; 1 Summers Oil & Gas (Permanent Edition), p. 138. In each of these citations there is the declaration that severance of the mineral estate or any part is completely effected by execution and delivery of a deed conveying such mineral estate, or conveying the land and reserving or excepting all or a portion of the minerals. Mr. Justice HART, speaking for the Court in *Claybrooke* v. *Barnes,* 180 Ark. 678 at p. 682, 22 S. W. 2d 390, at p. 392, 67 A. L. R. 1436, said:

"Where there has been a severance of the legal interest in the minerals from the ownership of the land, it has been held as to solid minerals, and the same rule has been applied to oil and gas, that adverse possession of the land is not adverse possession of the mineral estate, and does not defeat the separate interest in it . . ."[2]

---

[2] After mentioning applicable decisions, the opinion continues: "The rule [that an owner of minerals does not lose his right or his possession by any length of nonuse, nor did the owner of the surface acquire title by the statute of limitations to the minerals by his exclusive and continued occupancy and enjoyment of the surface merely] was approved by this court in *Bodcaw Lumber Co.* v. *Goode,* where it was said: 'The rule of those authorities is that the title to minerals beneath the surface is not lost by nonuse nor by adverse occupancy of the owner of the surface under the same claim of title, and that the statute can only be set in motion by an adverse use of the mineral rights, persisted in and continued for the statutory period.'

"So it may be taken as settled that the two estates, when once separated, remain independent, and title to the mineral rights can never be acquired by merely holding and claiming the land, even though title be asserted in the minerals all the time. The only way the statute of limitation can be asserted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to take actual possession of the minerals by open-

Once a mineral estate has been severed by grant or reservation, and the fee simple in the land is otherwise held, it is the duty of the assessor, when informed by personal notice or a recorded deed, to separately assess such mineral. Sec. 13600, Pope's Digest; *Huffman* v. *Henderson Co.*, for, "When this has not been done [mineral rights have not been assessed separately from the surface] the assessment made will be held to apply only to the surface rights".

While in the case at bar it is shown that a separate assessment of the minerals was undertaken, but failed on account of clerical error, this is immaterial, since an assessment after severance reaches only the land surface or fee, as distinguished from minerals.

It is conceded that under the authority of cases mentioned, if severance had been effected before the first payment of taxes by the adverse claimant, no title would have been acquired to the separate mineral estate; but it is argued that since the Jones payments began prior to such severance the statute was thereby put in motion as against the then undivided whole, both land and minerals, and its effect could not be interrupted by the severance.

At common law constructive possession of wild and uninclosed land followed the title and was deemed to be in the record owner until possession was invaded by actual occupancy. *Hardie* v. *Investment Guaranty & Trust Co., Limtd.*, 81 Ark. 141, 98 S. W. 701. By early statute Arkansas departed from this rule and enacted that such possession would be deemed to be in the person paying taxes under color of title for seven consecutive years. Pope's Digest 8920. This is the law here sought to be invoked by the adverse claimant. This statute is not in itself one of limitation, but merely creates a constructive possession by the payment of taxes and this creates a right to oust the constructive possession of the record owner, with the result that " . . . it is only by applying thereto

ing mines and operating the same. It is only when such possession has continued for the statutory period that title to the mineral estate by adverse possession is acquired."

the general statutes of limitation that such possession, like actual possession, can ripen into title by limitation''. *Hubble* v. *Grimes, ante,* p. 49, 199 S. W. 2d 313. Under this statute payment of taxes constitutes possession for each year in which payment is made, (*Price* v. *Greer,* 76 Ark. 426, 88 S. W. 985) beginning with the first payment and continuing, only as long as made. *Gaither* v. *W. A. Gage Co.,* 82 Ark. 51, 100 S. W. 80; *Cotton Wood Lbr. Co.* v. *Hardin,* 78 Ark. 95, 92 S. W. 1118; *Macrae* v. *Johnson,* 78 Ark. 603, 92 S. W. 1120. These payments must be unbroken for at least seven consecutive years. *Updegraff* v. *Marked Tree Lbr. Co.,* 83 Ark. 154, 103 S. W. 606. The statutory bar giving rise to the right to legal title does not attach until expiration of the seven-year period. *Price* v. *Greer.* Such possession may be broken (1) by actual possession adverse to tax payment claimant, (2) legal proceedings by record owner against claimant, (3) payment of taxes for one or more years by record owner or any other person not acting for claimant, or (4) failure by claimant to make payment for any one or more of the seven years. *Sibly* v. *England,* 90 Ark. 420, 119 S. W. 820; *Southern Lbr. Co.* v. *Ark. Lbr. Co.,* 176 Ark. 906, 4 S. W. 2d 928; *Straub* v. *Capps,* 178 Ark. 709, 13 S. W. 2d 294; *Carmical* v. *Ark. Lbr. Co.,* 105 Ark. 663, 152 S. W. 286.

Since the adverse claimant's constructive possession cannot ripen into title until expiration of seven full years from first payment, it follows that legal title to the mineral interest was in the record owner at the time of its conveyance, and transfer of title vested a good and merchantable title in the mineral grantee. The fact that at the time the land was held adversely did not prevent a transfer of this interest. While at common law one out of possession could not convey lands, the rule was early abolished in this state by statute. Pope's Digest 1809. See *Cloyes* v. *Beebe,* 14 Ark. 489; *Moore* v. *Sharp,* 91 Ark. 407, 121 S. W. 341, 23 L. R. A., N. S. 937.

The deed having effectively transferred title to the mineral interest, it became the duty of the assessor to make separate assessments of mineral and land rights. The fact that the assessor failed to separately list the

severed mineral interest is not material; for, as was said in *Huffman* v. *Henderson Co.*, ". . . the assessment made will be held to apply only to the surface rights." Since there can be no valid collection or payment of taxes without a valid assessment, it follows that neither the adverse claimant nor anyone else could have paid taxes on the mineral estate after severance. Tax payments by the adverse claimant applied only to the surface and to the unsevered mineral right.

The primary requirement of § 8920 of Pope's Digest is that the adverse claimant pay taxes on the claimed property for seven full years. It follows that where there was failure to pay on a severed mineral interest for such time, (although such payments were made on the land and the unsevered portion of the minerals) the dominant estate claimant, nevertheless, did not acquire title. This would be true even though there had been an honest belief that payment was on the entire interest—since actual payment and not intent controls.

Affirmed.