[No. 39726. Department Two. January 30, 1969.]

PAUL R. GILBREATH *et al., Appellants,* v. PACIFIC COAST COAL & OIL Co., *et al., Respondents.**

*Johnson, Quigley, Hatch & Loveridge,* by *Edward D. Campbell,* for appellants.

*Montgomery, Purdue, Blankinship & Austin,* for respondents.

HUNTER, C. J.—This action originated as a suit to quiet title to subsurface rights. The plaintiffs, as owners of certain land, commenced action to cancel a reservation of record which granted the defendants express immunity from any liability for the removal of subjacent support resulting from the mining of coal and minerals therefrom. The plaintiffs, Paul R. Gilbreath and J. Gordon Sparks, appeal the dismissal with prejudice of their suit and the award of

*Reported in 450 P.2d 173.

judgment for costs to the defendants, Pacific Coast Coal & Oil Company and Palmer Coking Coal Company, Incorporated.

Title to the disputed property, which now consists of 18 acres of vacant land situated in King County on Cougar Mountain, was first acquired by patent from the United States Government to the Northern Pacific Railroad in 1896. By mesne conveyances the land was later acquired by the Pacific Coast Coal Company.

In 1946, the Pacific Coast Coal Company deeded the land to Archer B. Clark and Maude M. Clark, but reserved the right to exploit the mineral resources " . . . regardless of whether or not said mining or other operations be negligently carried on or whether said subsidence be due to negligence."

In 1953, the Pacific Coast Coal Company conveyed by quitclaim deed, all their right, title and interest to all their land situated in King County to the defendant Pacific Coast Coal & Oil Company, a Washington corporation. The latter company in turn conveyed all of its interest to the defendant Palmer Coking Coal Company, Inc., also a Washington corporation.

The Clarks' deed and the above reservation were of public record when, in 1959, the Clarks deeded the land to the plaintiff Gilbreath, who thereafter sold his interest in the land to the plaintiff Sparks by real estate contract. However, the deed from the Clarks to Gilbreath did not mention the subsurface rights which had been retained by the Pacific Coast Coal Company in 1946.

It was stipulated in the trial court that title insurance on the deed from the Clarks to the plaintiff Gilbreath did not disclose the restrictions at issue in this lawsuit. The trial court's findings of fact further disclose that for the years from 1960 through 1966, the plaintiff Gilbreath paid the real property taxes assessed against the property described; and there was never any segregation for taxation purposes as between the surface of said land and any subsurface rights, including the coal and mineral rights, and the right to mine the same without liability for subsidence of the

surface. This appeal follows the dismissal of the plaintiffs' action.

The plaintiffs, as holders of the Clarks' deed, contend the trial court erred in holding they had not acquired title to the subsurface rights by payment of taxes for 7 years under RCW 7.28.080, which provides:

> Every person having color of title made in good faith to vacant and unoccupied land, who shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title.

We find the case of *McCoy v. Lowrie,* 42 Wn.2d 24, 30-33, 253 P.2d 415 (1953), to be controlling in the disposition of this contention. In that case the Ione Lumber & Pole Company, a corporation, purchased land subject to a mineral reservation in the deed; they subsequently sold the land to John E. McCoy by a bargain and sale deed, without reservations or exceptions of any kind. The trial court found that McCoy had no actual knowledge of the mineral reservation in the deed until many years later, during which time McCoy had paid all the taxes assessed upon the property. McCoy and his wife then instituted an action to quiet title to the mineral rights under RCW 7.28.080, *supra,* but this court reversed the trial court's finding for the plaintiffs. We there said that even assuming the McCoys had color of title, where there has been a severance of title to the mineral rights and title to the surface of a tract of land but no segregation for taxation purposes, payment of the taxes on the land does not constitute payment of the taxes on the mineral rights:

> Neither have the McCoys acquired, by virtue of RCW 7.28.080, any title to the mineral rights . . . . Assuming that the form of the deed from the Ione Lumber & Pole Co. to John E. McCoy would provide color of title so for [*sic*] as the mineral rights are concerned because it was in a form which, in the absence of a severance, would have conveyed the mineral rights with the surface rights, and assuming, further, that "vacant and unoccupied land," as used in RCW 7.28.080, also

means "vacant and unoccupied mineral rights," *the Mc-Coys nevertheless have never paid any taxes on the minerals or mineral rights.* They argue to the contrary, insisting that, because they have paid all the taxes levied on . . . they must have paid the taxes on the minerals, because RCW 84.04.090 (*cf.* Rem. Rev. Stat., § 11108), defining "real property" for taxation purposes, states that it includes "the land itself" and "all substances in and under the same."

This contention is answered in a case decided very recently by the supreme court of Colorado, *i.e., Mitchell v. Espinosa,* 243 P. (2d) (Colo.) 412 (1952).

. . . .

The answer was negative, for the reason that there had never been a valid tax on the reserved oil rights.

. . . .

See, also, *Jones v. Brown,* 211 Ark. 164, 199 S. W. (2d) 973 (1947); and *Claybrooke v. Barnes,* 180 Ark. 678, 22 S. W. (2d) 390; 67 A. L. R. 1436 (1929), where the court said that, where there has been a severance of the surface and mineral rights,

" . . . the minerals underlying a tract of land are not lost by failure to pay taxes thereon unless there is a separate assessment of taxes against them."

We are in accord with the law as laid down in the Colorado and Arkansas cases cited.

The McCoys having at all times since 1923 had the uncontested legal title to the surface rights . . . have, by the payment of the taxes levied on that quarter section, done only what the law requires them to do to protect their own title, and they have gained no new title to either the surface rights or the mineral rights. (Italics ours.)

■ We find that the rationale of the court in *McCoy,* would apply equally as well to the right of subjacent support, which is the subject matter of this dispute. Even assuming that the plaintiffs have color of title, as we did in the *McCoy* case, in the absence of a segregation of the surface rights from the subjacent support rights for taxation purposes, payment of the taxes on the land does not constitute payment of the taxes on the rights of subjacent support. No taxes were levied against the defendants' sub-

jacent support rights and they therefore could not lose these rights by nonpayment.

The plaintiffs further contend that the exemption of the defendants from taxation upon their interests in land creates a privileged class, and therefore a holding for the defendants would be against public policy.

■ The general rule of law in this state with respect to the power of taxation is that, subject to constitutional limitations, said power rests in the legislature. *State ex rel. Tacoma School Dist. No. 10 v. Kelly,* 176 Wash. 689, 30 P.2d 638 (1934); *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 211 P.2d 651 (1949). The fact that an owner of nonsurface rights may, in certain instances, escape tax assessment on his reserved rights is a matter of concern for the legislature, and is not within the purview of the courts, in the absence of an attack upon the constitutionality of the legislation involved.

In view of our disposition of the case, the other contentions raised are immaterial.

The judgment dismissing the complaint with prejudice is affirmed.

FINLEY and HAMILTON, JJ., and OTT, J. Pro Tem., concur.

NEILL, J. (concurring)—I do not agree with the principle enunciated in *McCoy v. Lowrie,* 42 Wn.2d 24, 253 P.2d 415 (1953). The dissenting opinions in that case adequately set forth the reasoning which I prefer; so need not be repeated here. There have been seven regular and many extraordinary sessions of the legislature since *McCoy* was decided and it has not acted to close the tax loophole which we judicially created by that decision.[1] However, as there are strong social and economic reasons for a rather strict application of the rule of stare decisis in property title matters (*Graves v. Elliott,* 69 Wn.2d 652, 419 P.2d 1008 (1966); *Woodworth v. Edwards,* 3 Wn.2d 579, 101 P.2d 591 (1940)),

[1] In five of those regular sessions, bills were introduced to meet this tax problem: H.B. 722 by Rep. Hallauer in 1955; S.B. 236 by Sen. Hallauer in 1957; S.B. 40 by Sen. Hallauer in 1959; H.B. 475 by Reps. Gallagher and Avey in 1961; H.B. 651 by Reps. Gallagher and Avey in 1965; and S.B. 148 by Sen. Hallauer in 1967.

I reluctantly concur in the majority opinion. In reaching this conclusion, I am mindful of our statement in *In re Yand's Estate*, 23 Wn.2d 831, 837, 162 P.2d 434 (1945):

> While long acquiescence in an erroneous decision may make the decision a rule of property or practice and raise it to the dignity of law, it must not be understood that a previous line of decisions affecting even property rights can in no case be overthrown. . . .
>
> If a series of decisions are clearly incorrect, through a mistaken conception of the statute or rule, *and no injurious results would follow from overruling those decisions*, it is the duty of the court to overrule those decisions. (Italics mine.)

But for us to now change the rule of the *McCoy* case, after owners of mineral rights have relied upon it for some 15 years, would cause injurious results. A change by the legislature would be prospective only and would give owners of such rights an opportunity to protect themselves under RCW 84.56.340 or other procedures which the legislature might provide.